OPINION OF THE COURT
Howard Miller, J.
The petitioner has filed 72 proceedings to cause the removal of 72 respondents who occupy separate units within the same mobile home park for nonpayment of rent. All of these cases involve common facts and issues of law. In the interest of expediency, the court will render a decision in the case entitled “Robert Hankin, doing business as Ba Mar Basin and Mobile Home Park, Petitioner-Landlord v Joseph Armstrong, Respondent-Tenant” bearing Index No. 2525/81. The decision in that case will be the decision in all the other 71 cases by inserting into the respective files a copy of this decision as the decision in such other proceeding as though this decision was individually rendered in each proceeding. The index numbers of the related proceedings are: Index Nos. 2525/81- *710 2528/81, both inclusive; Index Nos. 2530/81-2559/81, both inclusive; Index Nos. 2605/81-2612/81, both inclusive; Index Nos. 2619/81-2620/81, both inclusive; and Index Nos. 2623/81-2650/81, both inclusive.
The premises concerned is space rented by a mobile home tenant (hereinafter called tenant) in a mobile home park from a mobile home park owner, operator (sometimes hereinafter called landlord) as defined in section 233 of the Real Property Law.
The first issue to be addressed by the court concerns the compliance with section 233 of the Real Property Law. The relevant portions being:
“e. The mobile home park owner or operator shall offer the mobile home tenant the opportunity to sign a lease for a minimum of one year.
“f. Rules and regulations. 1. A mobile home park owner or operator may promulgate rules and regulations governing the rental or occupancy of a mobile home lot provided such rules and regulations shall not be unreasonable, arbitrary or capricious ***
“3. Any rule or regulation which does not conform to the requirements of this section shall be unenforceable and may be raised by the mobile home tenant as an affirmative defense in any action to evict on the basis of a violation of such rule or regulation.
“(c) * * * No fees, charges, assessments or rental fees may be increased by mobile home park owner or operator without specifying the date of implementation of said fees, charges, assessments or rental fees which date shall be no less than ninety days after written notice to all mobile home tenants”.
Has the mobile park owner offered the tenant “the opportunity to sign a lease for a minimum of one year”? (Real Property Law, § 233, subd e.) There are no specific standards provided in section 233 of the Real Property Law for rents. The statute provides that a 90-day notice may be directed to the tenant increasing fees, charges, assessments or rental fees (Real Property Law, § 233, subd f, par 3, cl [c]).
*711 Upon reading subdivision f of section 233 of the Real Property Law and clause (c) of paragraph 3 of that subdivision together, rental fees (par 3, cl [c]) are part of the rules and regulations and the landlord is not precluded from charging any amount of rent as long as such rental is “not * * * unreasonable, arbitrary or capricious” (subd f). The landlord maintains that the law was not intended to control rents, but rather other abuses involving rules and regulations. It is obvious that rents were not at issue in the case of Miller v Valley Forge Vil. (43 NY2d 626), but rather some of the rules and regulations of that mobile home park as they related in that case to the installation of air conditioners and the sale of a mobile home in the park. The Court of Appeals recognized the disparity of power between landlord and tenant with the advantage on the side of the landlord, observing (at p 629): “When this economic leverage led to visible patterns of commercial abuse, the Legislature responded by adding section 233 to the Real Property Law *** Inherent economic imbalance may not be exploited by park owners either through unfair monopolistic practices or by threat of eviction for failure to comply with burdensome park rules. While park owners are encouraged to ‘promulgate rules and regulations governing the rental or occupancy of a mobile home lot’, any rule that can be shown to be ‘unreasonable, arbitrary or capricious’ in purpose or practice will be unenforceable (Real Property Law, §233, subd f). In other words, management should not be able to bilk tenants.”
In the case before the court, the petitioner landlord sent a notice to the tenant advising the tenant that a lease was available for inspection. No copy of the proposed lease was enclosed with the notice. A copy of the lease should have been included with that notice. Sending a mere note that the lease is available and further imposing a duty upon the tenant “to contact the park manager” is not sufficient. The landlord is under a duty, in light of the statutory direction to offer a minimum of a one-year lease, to submit a copy of the lease. Assuming, arguendo, that the landlord did make a valid offer of a minimum one-year lease, does the proposed agreement herein constitute a lease pursuant to section 233 of the Real Property Law? In the proposed lease *712 herein, the landlord unilaterally retains the right to require an increase in the rent every 90 days. Williston, Contracts (3d ed, vol 1, § 43) notes: “One of the commonest kinds of promises too indefinite for legal enforcement is where the promisor retains an unlimited right to decide later the nature or extent of his performances. This unlimited choice in effect destroys the promise and makes it illusory.”
The ability to change the rent every 90 days in spite of a “one year lease” reverts back to the concept of “economic leverage” which inspired the adoption of section 233 of the Real Property Law (Miller v Valley Forge Vil., 43 NY2d 626, supra). This court finds that the fiction of calling an instrument a one-year lease wherein the essential element of rent is only certain for 90 days, is not within the concept of a one-year lease and therefore is not a lease within the contemplation of section 233 of the Real Property Law.
It is necessary to read all parts of section 233 of the Real Property Law together in order to effect an operable relationship. If the tenant refuses to sign the offered lease then the tenant would be in possession of the premises under the terms of section 233 of the Real Property Law which provides for a 90-day notice for any increase in rent or the tenant may remove from the park within the 90-day period. Though section 233 of the Real Property Law is silent, the court concludes that at the expiration of a lease under this statute, a landlord, if he desires further increase, must again offer the tenant a new lease for a minimum term of at least one year on at least 90 days’ notice. The rent for said one-year period need not be constant, but it must be certain.
The court, therefore, finds that the operator is not entitled to the increase he seeks, he not having made an appropriate offer of a lease under section 233 of the Real Property Law.
As to the granting of a judgment and warrant of eviction in this case, the court finds that the tenants have defaulted in the payment of rent. The requested increase of $20 per month as well as the underlying rental of $140 per month has been withheld by the tenants. This is clearly a matter *713 of nonpayment of rent for which the landlord is entitled to relief. The notice of petition and petition seeks relief for April, 1981 and then May, 1981 and June, 1981 if unpaid at time of hearing. The court therefore directs that a judgment and warrant be issued herein evicting the tenant from possession for nonpayment of rent for April, May and June, 1981. The court grants a five-day stay of execution of said warrant to permit the tenant to pay such rent at the rate of $140 per month for April, May and June, 1981, plus costs of $25 for each proceeding and disbursements. Each of the tenants in all 72 proceedings shall pay his own costs of $25 plus disbursements. If the said rent costs and disbursements are paid within the period of the five-day stay, the judgments and warrants are vacated with respect to the tenants who have paid.
The court dismisses the claim for late charges of $1 per day imposed by the landlord under the “rules and regulations”. The said charge is an unreasonable assessment. While there is no statutory limitation on late charges specified in section 233 of the Real Property Law the court recognizes a parallel situation of late charges where there is a default in the payment of mortgage installment or on a proprietary lease. With respect to late charges, section 254-b of the Real Property Law provides that: “[the] lender retains the right to collect a late charge on any instalment which has become due and remains unpaid, such charge on any such delinquent instalment, regardless of the period it remains in default, shall not exceed and shall only be enforced to the extent of two percent of such delinquent instalment; provided, however, that no charge shall be imposed on any instalment paid within fifteen days after the due date.” This standard provided by the New York Legislature in section 254-b is within the text of the Real Property Law as is section 233 and provides a guideline as to extent of late charges. This is appropriate though no specific “late charge” is set forth in section 233. Here the late charge is required by the rules and regulations permitted under section 233 of the Real Property Law.
The court dismisses the first, second, third and fourth counterclaims without prejudice. By this motion for sum *714 mary judgment all of the respective underlying claims having been disposed of, these counterclaims would be more appropriately heard elsewhere.