OPINION OF THE COURT
Wachtler, J.
In this declaratory judgment action against the owner of a mobile home park, a small group of individuals who rent space from the defendant challenge park rules banning “For Sale” signs and restricting air-conditioner installations. Although all of the park’s tenants consented to these regulations before taking occupancy, the plaintiffs contend that two rules in particular undermine broad protections guaranteed by section 233 of the Real Property Law and are therefore unenforceable.
In the plaintiffs’ view, because section 233 (subd f, par 3, cl [e]) specifically prohibits management from denying any park tenant the right to sell his mobile home within the park during the lease period, it must be assumed that the right to use any common auxiliaries reasonably necessary to market a mobile home is also guaranteed. And because park owners may not restrict the installation, service or maintenance of appliances by the terms of section 233 (subd f, par 3, cl [b]), the plaintiffs also urge annulment of the park rule predicating a tenant’s right to install a window air conditioner on the prior approval of management and written consent of next-door neighbors.
The lower courts adopted this position, but only by reading absolute substantive rights into a narrow regulatory statute. Aside from any violence to the statute, the grant of relief to the plaintiffs carried an unaccounted for loss to the majority of other tenants.
To be sure, the growth of mobile home parks and the enactment of section 233 are recent as well as unique phenomena. Mobile home owners are not apartment or condominium dwellers; nor are they campers. They have different needs and distinct concerns. Whatever the economic and qualitative benefits of year-round mobile home living, the fact remains *629 that, nomenclature notwithstanding, the homes themselves are relatively immobile. Once "planted” and "plugged in”, they are not easily relocated. Yet they lack the protective enclosure of apartment buildings. As a result, owners and operators of mobile home parks are in a unique position to take advantage of a more or less captive audience.
When this economic leverage led to visible patterns of commercial abuse, the Legislature responded by adding section 233 to the Real Property Law (L 1974, ch 973, as amd by L 1977, ch 131, § 1). Viewed in its entirety, the statute imposes a commonsense rule of thumb: Inherent economic imbalance may not be exploited by park owners either through unfair monopolistic practices or by threat of eviction for failure to comply with burdensome park rules. While park owners are encouraged to "promulgate rules and regulations governing the rental or occupancy of a mobile home lot”, any rule that can be shown to be "unreasonable, arbitrary or capricious” in purpose or practice will be unenforceable (Real Property Law, § 233, subd f). In other words, management should not be able to bilk tenants.
Evidence of overreaching under the cloak of park rules and regulations is singularly absent from the record in this case. The trial court found that the rules were not only adopted by and uniformly applied to all tenants, but for the vast majority were actually an inducement to rent space from the defendant. This consensus was apparently sustained over the years, for a petition signed by some 160 tenants and introduced at trial supported the park rules and asked that they be retained in the interest of preserving a safe, quiet and attractive place to live.
It is not seriously disputed that the contested park rules tend to advance this primary interest. The rule requiring management and neighbor approval for window air-conditioner installations, rather than diluting an ill-defined property right of mobile home park tenants, instead seeks to encourage a more fundamental interest—the expectation of common courtesy as well as reasonable toleration from one’s neighbors. Although no request to install a window unit has yet to be denied to any of the defendant’s tenants, any future denial would at most restrict only the level of noise pollution and resultant disturbance.
The plaintiffs concede this much, but base their objections on an isolated clause in the statute forbidding park *630 owners from "restricting] the installation * * * of any [electric or gas] appliance” (Real Property Law, § 233, subd f, par 3, cl [b]). When read in context, however, a more likely abuse emerges as the actual target. The provision is in fact directed against efforts to foster park monopolies such as laundry facilities by obstructing outside servicemen hired by a tenant to install a competitive appliance. When outsiders perform the work, owners are also precluded under this provision from imposing penalties in the form of mandatory "installation fees”.
Indeed, the statute specifically authorizes park owners to "determine by rule or regulation the style and quality of [exterior] equipment” (cl [a]). Because the noise restriction rule for outside air conditioners clearly operates to the mutual welfare of all tenants rather than the economic advantage of the defendant, its reasonableness should be self-evident.
Similarly, by prohibiting any form of commercial enterprise and any posting of "For Sale” signs within the park by tenants and management alike, the defendant has sought to advance the tenants’ interests, not to strip them of any statutory right. As explained to prospective tenants and discussed at trial, the ban was adopted to deprive outsiders of a ready-made excuse for "just wandering through the park [ostensibly] to find out what is going on, and what is for sale.” To the extent that the absence of individually posted "For Sale” signs deters strangers from browsing indiscriminately or perhaps "casing out” the park, a measure of safety as well as privacy is achieved. Particularly in an isolated community made up in large part of elderly tenants, this safeguard can hardly be called unreasonable. And if banning "For Sale” signs in practice does no more than avoid the unsavory image of a departing huddle of disgruntled tenants or displaced transients, the rule is no less supportable.
The plaintiffs claim that the ban nonetheless impairs an absolute right now guaranteed by the mobile home statute: "No mobile home park owner or operator shall deny any * * * tenant the right to sell his mobile home [or] * * * exact a commission1 or fee” without actually having acted as the tenant’s agent (Real Property Law, § 233, subd f, par 3, cl [e]). Yet the plaintiffs do not even suggest that management has in fact frustrated a single tenant’s efforts to sell or a single prospective purchaser’s ability to buy a mobile home within the signless park. And because the record suggests no unlaw *631 ful fee practices or untoward pressure to sell through park channels rather than outside agents or advertisements, we find no violation of section 233, either in letter or spirit.
The right to sell a mobile home cannot be assumed to include an incidental right to use any and all methods common to sales of residential property (compare Linmark Assoc, v Willingboro, 431 US 85), for a mobile home park is not ordinary residential property; nor can its owner or management be equated with a municipality. We therefore find no basis for redrafting a private agreement voluntarily entered by the plaintiffs and affirmatively supported by a majority of the park’s tenants.
Accordingly, the order of the Appellate Division should be reversed and rules 4 and 14 of the Rules and Regulations of Valley Forge Mobile Home Park declared enforceable.