*374 OPINION OF THE COURT
Fuchsberg, J.
In a misdemeanor prosecution tried without a jury in Justice Court, the defendant, New York Trap Rock Corporation, which operates a quarry in the Town of Poughkeepsie, has been found guilty and given a maximum fine of $100 for violating the town’s Unnecessary Noise Control Ordinance, a local law which, the Town Attorney tells us, was fashioned along guidelines provided by the State’s Department of Environmental Conservation.[1] The Appellate Term having affirmed without further opinion, the case is now here by leave of a Judge of this court pursuant to CPL 460.20. On this appeal, the defendant presses, in the main, two questions: Is the ordinance pre-emptive of or inconsistent with State law? If not, does the ordinance offend the constitutional void-for-vagueness doctrine of due process? In the alternative, by way of trial error the defendant argues that, in effect, the Judge placed the burden of proof on the defendant instead of on the People.
FACTS
The defendant corporation owns and operates the quarry occupying Clinton Point, a 1,200 acre site on the east bank of the Hudson in the southwesterly portion of the town. The property, one of the Nation’s leading sources of crushed dolomitic stone, has been mined for this resource since at least the nineteenth century and, since the advent of land planning, is zoned in accordance with its prior use. As an integral part of defendant’s operation, the stone, as quarried, is trucked to an on-site plant for crushing.
In more recent times, a tract north of the defendant’s land was developed into a quarter-acre residential subdivision. Thereafter, to minimize whatever noise is produced in the regular course of the quarrying, as well as to provide a visual block, the corporation, at great expense, separated itself from the residential area by erecting a large sound-absorbing berm in the form of a 3,900 foot earthen wall, whose base ranges from 100 to 150 feet in width and whose *375 30-foot height is topped by a stand of trees; acting as additional buffers are a 250-foot strip of land and an adjacent area occupied by a power line easement.
Since 1965, the quarry has operated on two shifts, one from 7:00 a.m. to 3:30 p.m. and the other from 4:30 p.m. to 1:00 a.m. No drilling or blasting is conducted on the later shift, but, to meet normal market demand, loading of the stone produced during the earlier one continued through both. For decades, loading of the loosened precrushed stone has taken place at least 2,500 feet from the boundary of the nearest residential area, from where it is hauled to the crushing plant, itself located more than a mile from the nearest residence. This schedule and procedure the defendant followed uneventfully until July 18, 1980. It then learned for the first time that three of the residents of the subdivision had made criminal complaints on the basis of which three informations, each relating to the identical nighttime loading operations of June 26, 1980 (one as of “about 11:01 PM”, the second as of “about 11:05 PM” and the third as of “about 11:16 PM”) and each accusing the defendant of “loud and unnecessary noises”. After a joint trial of the informations, the trial court ruled that they comprised but “one single alleged criminal transaction”.
THE ORDINANCE
It was only some three years earlier that the town, in 1977, had adopted the ordinance with which we here are concerned. At its heart is its section 3.01, which, after a blanket provision that “[n]o person shall make * * * any unnecessary noise”, defines the last phrase, among other things, as “any excessive or unusually loud sound or any sound which either annoys, disturbs, injures or endangers the comfort, repose, health, peace or safety of a person”.
Section 2 of the ordinance lists 10 “standards to be considered in determining whether unnecessary noise exists in a given situation”, while expressly stipulating that these are not to be exclusive. The 10 are as follows:
“(a) the intensity of the noise
“(b) whether the nature of the noise is usual or unusual
“(c) whether the origin of the noise is natural or unnatural
*376 “(d) the volume and intensity of the background noise, if any
“(e) the proximity of the noise to sleeping facilities
“(f) the nature and the zoning districts of the area within which the noise emanates
“(g) the time of day or night in which the noise occurs
“(h) the time duration of the noise
“(i) whether the sound source is temporary
“(j) whether the noise is continual or of a periodic or impulsive character”.
As if to emphasize the nonexclusivity of this decalogue, it also is preceded by section 3.00, which consists of a single sentence reading: “Any act or violation of any of the provisions of this ordinance is deemed to be in violation of Section 3.01 * * * without in any way limiting the generality of the provisions of section 3.01”.
Next, its section 3.02, in referring to 17 acts which will violate the ordinance if they create “unnecessary noise”, qualifies these too by declaring that “any enumeration herein shall not be deemed to be exclusive”. Of the 17, defendant was charged with the violation of only one, subdivision (e), which, after mentioning “the loading or unloading of any vehicle * * * so as to create unnecessary noise at the adjoining property line”, adds that, “[wjithout limiting the above language, it shall be a violation * * * to load or unload any vehicle * * * between the hours of 11:00 P.M. and 7:00 A.M. within 300 feet of the boundary lines of a residential district”.
Defendant’s conviction was for violating the general provisions of section 3.01 and that part of subdivision (e) of section 3.02 which prohibits loading which creates “unnecessary noise at the adjoining property line”. The court found no evidence to support the violation of that part of subdivision (e) of section 3.02 which prohibits loading within 300 feet of a residential district. In announcing these decisions, it also overruled the defendant’s constitutional contention.
*377 ISSUES
I
Defendant advances contentions, first, that the ordinance, “in imposing criminality without proof of any of the five elements required by Penal Law section 240.45, is unconstitutionally inconsistent with State law”[2] and, second, that “in punishing ‘noises’ that offend individual persons, [the ordinance] has exceeded the delegated authority in Town Law Section 130 (11)”.[3] The first, that of “pre-emption”, takes the tack that the town is utterly without any right to act at all. The second, that of “inconsistency”, asserts that, while local enactments on the subject of the ordinance are permissible, the present one is in conflict with existing State law. We reject both arguments.
There is nothing in section 240.45 of the Penal Law, the criminal nuisance statute, to indicate an intention by the Legislature, directly or indirectly, to restrict the town’s power to enact a noise ordinance. To the contrary, by section 10 (subd 1, par [ii], cl a, subcl [12]) of the Municipal Home Rule Law, local governments have been given broad authority to adopt ordinances governing the safety, health and well-being of those within their jurisdictions and, moving from the general to the particular as it affects this case, by subdivision 11 of section 130 of the Town Law, towns have received specific authority to regulate noise in their communities, the latter the surest indication that the State has not intended to restrict the regulation of noise to itself (see, also, NY Const, art IX, § 2, subd [c], par [ii], cl [10]).
These authorizations are not undermined by section 240.45. True it is that, in prohibiting conduct which unreasonably endangers the “safety or health of a considerable number of persons”, this statute, though it does not do so in so many words, may be applied in circumstances involving
*378 excessive and unreasonable noise. However, the Municipal Home Rule Law, designed as it is to make government more responsive to the needs of particular localities, makes this possibility one of little moment, for, wherever practicable, it encourages reconciliation of State and local laws (see Municipal Home Rule Law, § 51)..
Thus, that an ordinance has some connection with a subject upon which a State statute exists does not automatically vitiate it on that account (People v Judiz, 38 NY2d 529, 531-532). It is, therefore, well settled that, if a town or other local government is otherwise authorized to legislate, it is not forbidden to do so unless the State, expressly or impliedly, has evinced an unmistakable desire to avoid the possibility that the local legislation will not be on all fours with that of the State (Monroe-Livingston Sanitary Landfill v Town of Caledonia, 51 NY2d 679, 683; People v Cook, 34 NY2d 100, 109).
In sum, unless one were to essay the narrowest of constructions, it cannot be said that the town’s antinoise ordinance, in any meaningful respect, allows what State law forbids or forbids what State law allows.
II
Turning then to the- void-for-vagueness doctrine, we begin our analysis by a brief review of the reasons why it at times has been called “the first essential of due process of law” (Connally v General Constr. Co., 269 US 385, 391).
As we have had occasion to reiterate in recent years, a prime purpose is to meet “the constitutional requisite that a statute be ‘informative on its face’ (People v Firth, 3 NY2d 472, 474) * * * to assure that citizens can conform their conduct to the dictates of the law” (People v Illardo, 48 NY2d 408, 413). To this end, nothing less than “adequate warning of what the law requires” will do (People v Cruz, 48 NY2d 419, 424, app dsmd 446 US 901).
Of equal concern is the prevention of “arbitrary and discriminatory enforcement by requiring ‘boundaries sufficiently distinct’ for police, Judges and juries to fairly administer the law” (People v Cruz, supra, at p 424, citing United States v Petrillo, 332 US 1, 7). “As common sense *379 and experience both tell us, unless by its terms a law is clear and positive, it leaves virtually unfettered discretion in the hands of law enforcement officials (People v Illardo, supra, at pp 413-414).[4]
These principles before us, we recognize that noise regulation poses special problems of draftsmanship and enforcement. The nature of sound makes resort to broadly stated definitions and prohibitions not only common but difficult to avoid. In an effort to accommodate the limitations of language and constitutional conformity, antinoise cases therefore have tended to find regulations valid when they apply within limited contexts which may convey what in Cruz was called “an accepted meaning” (48 NY2d, at p 428) to such otherwise imprecise words as “loud” or “excessive” (e.g., People v Byron, 17 NY2d 64 [“excessive or unusual” noise emanating from a muffler upheld because within ken of any ordinary motorist’s common knowledge]; Grayned v City of Rockford, 408 US 104 [“noise or diversion” which present “imminent threat of violence” adjacent to a school upheld]; State v Dorsett, 3 NC App 331 [“unreasonably loud, disturbing and unnecessary noise” upheld as applied to motorcycles]).
In contrast to limited context legislation, those in which there was no setting from which vague words could take on a reasonable degree of definitiveness have not survived (e.g., United Pentecostal Church v Steendam, 51 Mich App 323; City of Columbus v Becher, 173 Ohio St 197; Gardner v Ceci, 312 F Supp 516).
So measured, the Town of Poughkeepsie ordinance obviously is one drafted as broadly as possible, presumably in *380 what no doubt was a well-intentioned attempt to cover every conceivable noise that a complainant or a law enforcement officer might decide it appropriate to pursue. It is precisely on this purposeful generality that the defendant would have us conclude that section 3.01 and subdivision (e) of section 3.02 of the ordinance are unconstitutionally vague as applied to it.
First, examining the seemingly more specific of these provisions, subdivision (e) of section 3.02, it is apparent that, while the defendant could readily identify with the loading and unloading verbiage, the only concrete thing to which it could look for a norm of expected conduct was the ensuing sentence, which specified that “unnecessary noise” was not to be created “within 300 feet of the boundary line of a residential district”. All well and good, but defendant, on reading this language, could hardly be expected to have noticed, as mandated by the first prong of the vagueness test, that, because the sentence starts with the unreasonably uninformative phrase “[w]ithout limiting the above language”, it would commit the charged crime even when its loading activity took place not merely 300 feet, but 2,400 feet from the boundary.
The picture this portrays is still more egregious when we consider that the identical conduct also resulted in conviction under section 3.01, which generally prohibited the making of “any unnecessary noise”. This section is permeated with vagueness. Among other things, for instance, the disjunctive definition of “unnecessary noise” as “any excessive or usually loud sound or any sound which * * * annoys * * * a person” (emphasis added) impermissibly would support a conviction on any sound which annoys another person, for it could rest solely upon the “malice or animosity of a cantankerous neighbor” (Miller v Valley Forge Vil., 43 NY2d 626, 632 [Cooke, J., dissenting]) or “boiling point of a particular person” (Ashton v Kentucky, 384 US 195, 200 [Douglas, J.], supra), situations which are the product, not only of imprecise standards, but of no standard at all (see, also, Gregory v Chicago, 394 US 111, 118, 124-125; Connally v General Constr. Co., 269 US 385, 391, supra).
*381 The 10 “specific” standards by, which section 2 of the ordinance self-servingly suggests the presence of “unnecessary noise” may be unearthed fare no better. Nothing but abstract lines of inquiry, none of the 10 provides a guideline for the perplexed would-be noisemaker. From whose point of view are the “intensity”, “proximity”, “duration”, “time” and other subjective concepts which it would submit for consideration to be judged? How is a future defendant to know whether the “usual or unusual” prescription of the second of these “standards”, or the “natural or unnatural” one of the third, or the “continual” or “periodic” or “impulsive” character of the tenth is the alternative to be preferred? Moreover, what if one somehow can accord with all these “standards”, but still annoys another? Perhaps worst of all, since the “standards” to be applied are “not limited” to the listed ones, where does the defendant-to-be go from there?
Overall, in whole and in many of its parts, as indicated, the pervasive nature of its catchall effect makes the ordinance not only a ready candidate for ad hoc and discriminatory enforcement but one whose defects are not remediable by a narrowing construction (see Grayned v City of Rockford, 408 US 104, 111, supra).
CONCLUSION
The Unnecessary Noise Control Ordinance of the Town of Poughkeepsie is unconstitutional. The order of the Appellate Term should, therefore, be reversed and the informations dismissed.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler and Meyer concur.
Order reversed, etc.

. (Bureau of Noise, NYS Dept of Env Cons, Local Noise Ordinance Handbook [1976].) We are also informed that the ordinance was patterned on a so-called Model Local Noise Ordinance drafted by the National Institute of Municipal Officers.

. In pertinent part, section 240.45 of the Penal Law provides: “A person is guilty of criminal nuisance when: (1) By conduct either unlawful in itself or unreasonable under all the circumstances, he knowingly or recklessly creates or maintains a condition which endangers the safety or health of a considerable number of persons”.

. “The town board * * * may enact * * * for the following purposes * * * 11. * * * preventing unreasonably loud or disturbing noises, determined by the board to be of a character, intensity or duration as to be detrimental to the peace, welfare or good order of the people”.

. Our analysis of defendant’s vagueness contention is simplified by its concession that “(t)his is a non-first amendment case”. We therefore need not determine whether the ordinance is overbroad, a concept related to, but analytically distinct fropi, that of vagueness (see Tribe, American Constitutional Law, § 12-26, p 716), nor need we employ the vagueness doctrine as a “buffer zone of added protection at the peripheries of * * * Bill of Rights freedoms” (Note, Void-for-Vagueness Doctrine in the Supreme Court, 109 U of Pa L Rev, 67, 75), thereby more carefully scrutinizing the allegedly vague ordinance than if no First Amendment claim were involved (Ashton v Kentucky, 384 US 195, 200; People v Cook, 34 NY2d 100, 115). Although People v Illardo (48 NY2d 408) had First Amendment overtones, the speech involved there was determined to be unprotected and the case was, therefore, not decided on First Amendment grounds.