**Charles A. WEIL, Plaintiff,**

v.

**Joseph T. McCLOUGH and Ermyn Stroud, Defendants.**

**No. 84 Civ. 3730 (GLG).**

United States District Court,
S.D. New York.

Oct. 1, 1985.

Charles A. Weil, New York City, plaintiff pro se.

Frederick A.O. Schwarz, Jr., Corporation Counsel of the City of New York by Ruby E. Bradley, Asst. Corp. Counsel, New York City, for defendants.

## OPINION

GOETTEL, District Judge.

On June 6, 1982, the plaintiff, who was operating an automobile in the midst of what he describes as a massive Manhattan gridlock, honked his horn, apparently a number of times. He received a citation for "horn honking" in violation of N.Y.City Admin.Code § 1403.3–4.05(1) (1975), which provides, in pertinent part, "No person shall operate or use or cause to be operated or used any claxon installed on a motor vehicle, except as a sound signal of imminent danger...." *Id.* A hearing on the citation was scheduled before the New York City Environmental Control Board (the "Board"). Prior to the hearing, the plaintiff commenced an Article 78 proceeding in New York State Supreme Court, Special Term, seeking a declaration that § 1403.3–4.05(1) was unconstitutional, a stay of the hearing before the Board, and an order prohibiting the Board from proceeding further with the matter. By order dated December 17, 1982, Special Term denied the requested relief. The plaintiff unsuccessfully appealed that decision.

On May 29, 1984, the plaintiff brought this action *pro se* seeking a declaration that N.Y.City Admin.Code § 1403.4–4.05(1) (1975) is unconstitutional and an order enjoining the proceedings before the New York Environmental Control Board. On June 1, 1984, this Court denied the plaintiff's motion for a temporary restraining order. The plaintiff's administrative hearing was conducted on June 15, 1984. The administrative law judge found him guilty of illegal horn-honking and fined him $250.00.

By decision dated November 16, 1984, this Court denied the defendants' motion for summary judgment on the grounds of *res judicata.* The defendants now move to dismiss the action pursuant to Fed.R.Civ.P.

12(b) for failure to state a-claim on which relief can be granted. The plaintiff cross-moves pursuant to Fed.R.Civ.P. 12(c) for judgment on the pleadings. The plaintiff has also moved pursuant to Fed.R.Civ.P. 15(d) for leave to file a supplemental pleading and pursuant to Fed.R.Civ.P. 12(f) to strike all of the defendants' affirmative defenses. For the reasons stated below, the defendants' motion is granted. The plaintiff's cross-motion is denied. The plaintiff's other motions are thereby rendered moot.

## I. Discussion

### A. The Free Expression Claim

The plaintiff first contends that this application of section 1403.3–4.05(1) of the New York City Administrative Code ("the ordinance") violated his first amendment right to freedom of speech as incorporated in the due process clause of the fourteenth amendment. According to the plaintiff, its application limited his ability to express his desire to communicate with a specific policeman. (For purposes of this motion we will accept his claim that he was seeking to advise the traffic officer of the massive traffic jam—in case it had not come to the officer's attention—and that he was not simply expressing his frustration at being impeded by it.)

■ Of course, simply because conduct has a communicative element does not make a statute prohibiting or limiting that conduct *per se* unconstitutional. *Cox v. Louisiana,* 379 U.S. 536, 555, 85 S.Ct. 453, 464–65, 13 L.Ed.2d 471 (1965). The Supreme Court has recognized the validity of enactments that reasonably limit the time, place, or manner of speech without regard to content; that serve a significant governmental interest; and that leave ample alternative channels for communication. *Consolidated Edison Co. v. Public Service Commission,* 447 U.S. 530, 535–36, 100 S.Ct. 2326, 2332, 65 L.Ed.2d 319 (1980).

■ The ordinance does not attempt to regulate the "content" of horn-honking.

Rather, it prohibits all horn-honking, except in cases of imminent danger, regardless of the user's intended meaning.[1] The ordinance also leaves open alternative means of attracting the attention of a police officer. It remains for a motorist to flash his lights, signal with his hands, or call out. The plaintiff, nevertheless, asserts that his message was stifled because he had no alternate means to relay his message. However, in the same breath, he admits that his message was not, in fact, stifled; a police officer who acknowledged his hand signal proceeded to ignore it.[2] Thus, the ordinance neither discriminates among messages nor limits the expression of any particular message. It is based on the manner of expression, not on its content.

The ordinance is also reasonably related to two significant governmental interests, reducing noise and maximizing the utility of car horns. The reduction of noise, particularly in a noise polluted city like New York, is a particularly compelling government interest. *Kovacs v. Cooper,* 336 U.S. 77, 87, 69 S.Ct. 448, 453–54, 93 L.Ed.2d 513 (1949). In this Court's view, any effort to dim the seemingly unending crescendo of honking horns on New York's city streets is to be commended. This appears to be the Supreme Court's view as well. In *Kovacs v. Cooper, supra,* the Court upheld the constitutionality of an ordinance banning sound trucks from the public streets of Trenton, New Jersey. The Court thought it permissible "to bar sound trucks with broadcasts of public interest, amplified to a loud and racous volume, from the public ways of municipalities." *Id.* at 87, 69 S.Ct. at 453–54. To forbid, on first amendment grounds, the regulation of horn honking, which has little if anything to do with the public interest, would be to ignore and, indeed, flaunt, this important precedent.

The honking of car horns in situations not involving imminent danger not only causes unnecessary noise, but also serious-

---

1. Indeed, whether a honk or honks can ever relay an intelligible message (without the assistance of Morse or some other code) is debatable.

2. We need not consider the propriety of the officer's response. That issue is not before us.

ly undercuts the usefulness of such horns as a method of indicating the existence of an actual emergency condition. New York City has a compelling interest in seeing that this does not occur. Limitations on horn honking are a rational means to this end.

The Court, therefore, concludes that the ordinance is a reasonable time, place, or manner restriction that does not violate the first amendment right to freedom of speech as incorporated in the due process clause of the fourteenth amendment.

### B. The Vagueness and Overbreadth Claims

■ "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined."[3] *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972). Of course, language can never provide meaning with mathematical certainty. The test in determining whether or not a statute is unconstitutionally vague is whether "men of common intelligence must necessarily guess at its meaning." *Broadrick v. Oklahoma*, 413 U.S. 601, 607, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830 (1973).

The degree of vagueness that the Constitution tolerates . . . depends in part on the nature of the enactment.

Thus, economic regulation is subject to a less strict vagueness test. . . . The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are less severe. . . .

Finally, perhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights.

*Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982). Although the plaintiff claims that the ordinance inhibited his speech, the ordinance poses little threat to free speech. *See supra* pp. 1296–97. The relatively light civil penalty to which the plaintiff was subjected further justifies the application of only moderate scrutiny to this regulation.

■ A statute's certainty is measured with respect to the actual conduct of the person attacking the statute. *diLeo v. Greenfield*, 541 F.2d 949, 953 (2d Cir.1976). The plaintiff asserts that the term "imminent danger"—the ordinance forbids all honking except that which signals "imminent danger"—did not clearly indicate to him the conduct that the ordinance proscribes, or, more precisely, that which it did not proscribe. We disagree. The plaintiff readily admits that he honked his horn not to signal danger but to attract attention. Upon reading the statute, a person of ordinary intelligence could not help but discern that the ordinance prohibits such conduct.

Even viewed in the abstract, the phrase "imminent danger" poses little if any interpretative problem to the individual of ordinary intelligence. The word "danger" provides adequate notice in innumerable situations in our everyday lives. Likewise, the courts have consistently upheld the use of the word "imminent" against vagueness

3. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person or ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policement, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute "abut[s] upon sensitive areas of basic First Amendment freedoms," it "operates to inhibit the exercise of [those] freedoms." Uncertain meanings inevitably lead citizens to " 'steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked."
*Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972) (footnotes omitted).

challenges. *See, e.g., Gregory v. Chicago,* 394 U.S. 111, 116–17, 121–22, 89 S.Ct. 946, 949, 951–52, 22 L.Ed.2d 134 (1969) (Black, J., concurring). In *Kovacs v. Cooper, supra,* a vagueness challenge concerning the words "loud and raucous," merited "only a passing inference." *Id.* at 79, 69 S.Ct. at 449–50. In summarily rejecting the challenge, Justice Reed stated, "While these are abstract words, they have through daily use acquired a content that conveys to any interested person a sufficiently accurate concept of what is forbidden." *Id.* Here, where the statute is, in our view, far more definite, the plaintiff cannot be heard to object on vagueness grounds. Even under the most exacting scrutiny, this ordinance is sufficiently definite to avoid constitutional infirmity.

■ The plaintiff also mounts an "overbreadth" attack against the ordinance. This effort also fails. "A clear and precise enactment may nevertheless be 'overbroad' if in its reach it prohibits constitutionally protected conduct." *Grayned v. City of Rockford, supra,* 408 U.S. at 114, 92 S.Ct. at 2302 (footnote omitted). A finding that a regulation of speech is a valid time, place, or manner regulation precludes an overbreadth attack.[4] *Grayned v. City of Rockford, supra,* 408 U.S. at 114–21, 92 S.Ct. at 2302–06 (time place and manner analysis cures overbreadth objection). The rationale is apparent. A law that is a reasonable time, place, and manner regulation does not reach constitutionally protected conduct and, therefore, cannot be overbroad.[5]

II. *Conclusion*

The defendants' motion to dismiss for failure to state a claim for relief is granted. The plaintiff's motion for judgment on the pleadings is denied. The Court need not consider the plaintiff's motion to strike or his motion to supplement the pleadings.

The clerk will enter judgment accordingly.

SO ORDERED.

---

**4.** The plaintiff's objection to the defendants' refusal to turn over its records of all other violations of the ordinance over the last several years is immaterial. The vagueness analysis concerns only the plaintiff. *See supra* p. 1297. It is also irrelevant to the overbreadth issue, since that issue can be disposed of, in this case, without discovery. *See supra* pp. 1298.

**5.** The plaintiff's papers also appear to contend that the ordinance at issue denies him both the equal protection of the laws and due process of law in violation of the fourteenth amendment. Neither of these challenges need long detain us. The failure of the plaintiff's first amendment challenges dooms his due process and equal protection claims.

Whenever a state law impermissibly burdens the exercise of [freedom of speech] there is actually a violation of the due process guarantee. Since the provisions are made applicable to the states by the due process clause, state laws which burden these rights constitute a denial of liberty as protected by that clause. Because the interpretation of the substantive guarantees of the first amendment are the same regardless of whether the provisions are being applied to state or federal actions, there is little need to discuss substantive due process guarantees in these cases. This same analysis applies in equal protection cases.

*J. Nowak, R. Rotunda, J.N. Young,* Constitutional Law 817 (2d Ed.1983).

The other contentions in the plaintiff's papers have been considered and rejected as without merit.