CITY OF MADISON, Plaintiff-Appellant,†

v.

Richard E. BAUMANN, Defendant-Respondent. [Case No. 89–0452.]

CITY OF MADISON, Plaintiff-Appellant,†

v.

David MATTHEWS, Defendant-Respondent. [Case No. 89–0453.]

Court of Appeals

*Nos. 89–0452, 89–0453. Submitted on briefs October 12, 1989.—Decided March 15, 1990.*

(Also reported in 455 N.W.2d 647.)

†Petition to review granted.

For the plaintiff-appellant the cause was submitted on the briefs of *Henry A. Gempeler,* city attorney, with *Marinus J.W. Petri,* assistant city attorney, of Madison.

For the defendants-respondents the cause was submitted on the brief of *Michael J. Briggs* of Madison.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

SUNDBY, J.   The City of Madison appeals from an order dismissing citations issued by a city police officer to Richard E. Baumann and David E. Matthews for violating the city's anti-noise ordinance, sec. 24.04(1), Madison General Ordinances, by playing musical instruments and singing on State Street. Section 24.04(1) provides:

> No person shall make or assist in making any noise tending to unreasonably disturb the peace and quiet of persons in the vicinity thereof unless the making and continuing of the same cannot be prevented and is necessary for the protection or preservation of property or of the health, safety, life or limb of some person.

The defendants do not claim that the noise they are alleged to have made could not be prevented or was necessary.

The circuit court found that sec. 24.04(1), MGO, is unconstitutionally vague and overbroad. We conclude that sec. 24.04(1) is not overbroad. However, we conclude that the ordinance is unconstitutionally vague. We affirm the circuit court's order.

## BACKGROUND

The facts are stipulated.

State Street is a mall on which all vehicular traffic except buses, bicycles, taxis, delivery vehicles and emergency vehicles is prohibited. The buildings adjoining State Street combine commercial and residential uses. Many buildings have ground-level business tenants and upper-level residential tenants.

The city's policy has been to encourage the use of State Street as an area in which people may not only do business but may repair for recreation and entertainment. The city permits and regulates the vending of food and crafts on the street, expends money to subsidize artistic performances, employs several persons to clean and maintain the area, levies special assessments on adjoining properties for the street's upkeep as a pedestrian mall, and decorates the street with lights and ban-

ners and other items appropriate to various seasons of the year.

Defendants are professional musicians who for at least three years prior to this action have performed as street musicians or minstrels on State Street at various times of the year, at hours ranging from 10:00 a.m. to 1:00 a.m.

At or about 11:22 p.m. on June 12, 1986, defendant Baumann was playing a violin and defendant Matthews a guitar in a small paved area on the north side of State Street, between the sidewalk and a small park known as Peace Park. At least one of the defendants was singing. Neither defendant was using amplification equipment. A resident of a second-story apartment across the street heard defendants' music. He called city police. From a building across the street, he and a police officer observed and heard defendants' musical performance. The police officer did not use any sound measuring device to determine the sound level of the defendants' music. After listening to the defendants' performance, the police officer issued each of them a citation for violating sec. 24.04(1), MGO.[1]

I.

OVERBREADTH

The courts have not always made a clear distinction between the doctrines of overbreadth and vagueness. See cases collected in Annotation, *Supreme Court's Views as to Overbreadth of Legislation in Connection with First*

---

[1]The city did not resist the defendants' motion to dismiss on the grounds that its proof at trial would establish a violation of sec. 24.04(1), MGO. We consider that the parties seek a determination of the validity of the ordinance on its face.

*Amendment Rights,* 45 L. Ed. 2d 725, 737–38 (1976). This is illustrated by *Cox v. Louisiana,* 379 U.S. 536, 551 (1965), where the court held that the statute at issue was "unconstitutionally vague in its overly broad scope." However, a statute or ordinance may be overbroad even though it is not vague. "A clear and precise enactment may nevertheless be 'overbroad' if in its reach it prohibits constitutionally protected conduct." *Grayned v. City of Rockford,* 408 U.S. 104, 114 (1972) (footnote omitted).

The distinction between overbreadth and vagueness is illustrated in *Talley v. California,* 362 U.S. 60 (1960), where the Court declared void on its face a City of Los Angeles ordinance forbidding the distribution of handbills which did not contain the names and addresses of the printer and the distributor. The city urged that the ordinance was aimed at identifying those responsible for fraud, false advertising and libel. The court held, however, that the ordinance was too broad in that the identification requirement might deter perfectly peaceful discussions of public matters of importance. *Id.* at 65. *See also Zwickler v. Koota,* 389 U.S. 241 (1967) (penal law banning distribution of election handbills without identification of printer and distributor). Thus, regulation may be overbroad if it clearly and precisely includes the defendant's conduct but also includes conduct which the state may not proscribe.

The Wisconsin Supreme Court in *State v. Princess Cinema of Milwaukee,* 96 Wis. 2d 646, 292 N.W.2d 807 (1980), explained the distinction between an overbroad statute and a vague statute. *Princess Cinema* involved a criminal obscenity statute, sec. 944.21(1)(a), Stats. (1977). The court said that an overbroad statute "is one that is designed to burden or punish activities which are

not constitutionally protected, but the statute sweeps too broadly and includes within its compass activities protected by the First Amendment." *Id.* at 655, 292 N.W.2d at 812 (footnote omitted). "A vague statute, by comparison, is one which operates to hinder free speech through the use of language which is so vague as to allow the inclusion of protected speech in the prohibition or to leave the individual with no clear guidance as to the nature of the acts which are subject to punishment." *Id.* at 656, 292 N.W.2d at 813. The court noted that problems of vagueness and overbreadth may often arise together. *Id.* That is not the case here. The defendant's conduct—making any noise tending to unreasonably disturb the peace and quiet of persons in the vicinity thereof—is the "core" conduct intended to be proscribed by sec. 24.04(1), MGO. Noise, even where it is protected speech, may be regulated by the government, subject to the protections of the first amendment. *Ward v. Rock Against Racism,* 491 U.S. —, 105 L. Ed. 2d 661, 675 (1989).

We therefore conclude that sec. 24.04(1), MGO, is not unconstitutionally overbroad.

## II.

## VAGUENESS: FIRST AMENDMENT CONSIDERATIONS

We take into account that sec. 24.04(1), MGO, "abut[s] upon sensitive areas of basic First Amendment freedoms," *Grayned,* 408 U.S. at 109 (quoting *Baggett v. Bullitt,* 377 U.S. 360, 372 (1964)), and "operates to inhibit the exercise of [those] freedoms." *Id.* (quoting *Cramp v. Board of Public Instruction,* 368 U.S. 278, 287

(1961)) (brackets added in *Grayned*).[2]

"[S]tandards of permissible statutory vagueness are strict in the area of free expression." *N.A.A.C.P. v. Button,* 371 U.S. 415, 432 (1963). "Precision of regulation must be the touchstone in an area so closely touching our most precious freedoms." *Id.* at 438.

"If . . . the law interferes with the right of free speech or of association, a more stringent vagueness test should apply." *Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. 489, 499 (1982) (footnote omitted). The possible chilling effect of a vague statute or ordinance touching on free speech requires that, upon review, such regulation be subjected to heightened scrutiny.[3] "So long as the statute remains available to the

---

[2] "Music is one of the oldest forms of human expression. From Plato's discourse in the Republic to the totalitarian state in our own times, rulers have known its capacity to appeal to the intellect and to the emotions, and have censored musical compositions to serve the needs of the state." *Ward v. Rock Against Racism,* 105 L. Ed. 2d 661, 674 (1989). We need not, however, look beyond the boundaries of our nation to appreciate the extent to which music may influence social and politic debate. Contrary to totalitarian states, however, we have chosen to permit free musical expression to serve the needs of the state. "True music . . . must repeat the thought and inspirations of the people and the time. My people are Americans. My time is today." Jablonski and Stewart, *The Gershwin Years* (1926). "Music . . . is protected under the First Amendment." *Ward,* 105 L. Ed. at 674.

[3] Because sec. 24.04(1), MGO, abuts upon the area of speech, we must apply to the ordinance a more stringent vagueness test than we would apply to a general police power regulation. "When a statute infringes on the exercise of First Amendment rights, the burden of establishing its constitutionality is on its proponent." *Wisconsin Action Coalition v. City of Kenosha,* 767 F.2d 1248, 1252 (7th Cir. 1985).

State the threat of prosecutions of protected expression is a real and substantial one. Even the prospect of ultimate failure of such prosecutions by no means dispels their chilling effect on protected expression." *Dombrowski v. Pfister,* 380 U.S. 479, 494 (1965). "It is not merely the sporadic abuse of power by the censor but the pervasive threat inherent in its very existence that constitutes the danger to freedom of discussion." *Thornhill v. Alabama,* 310 U.S. 88, 97 (1940). Where free speech is implicated, we are concerned with the vagueness of the regulation "on its face" because such vagueness may in itself deter constitutionally protected and socially desirable conduct. *United States v. National Dairy Prod. Corp.,* 372 U.S. 29, 36 (1963).

> [I]n the First Amendment area 'government may regulate . . . only with narrow specificity.' *N.A.A.C.P. v. Button,* 371 U.S. 415, 433 . . . (1963). 'As a matter of due process, '[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids.' *Lanzetta v. New Jersey,* 306 U.S. 451, 453 . . . (1939). The general test of vagueness applies with particular force in review of laws dealing with speech. '[S]tricter standards of permissible statutory vagueness may be applied to a statute having a potentially inhibiting effect on speech; a man may the less be required to act at his peril here, because the free dissemination of ideas may be the loser.' *Smith v. California,* 361 U.S. 147, 151 . . . (1959).

*Hynes v. Mayor of Oradell,* 425 U.S. 610, 620 (1976).

Although sometimes onerous and frustrating to those charged with municipal administration, the protections of the United States Constitution represent checks on governmental authority which must be pre-

served if truth is to be given the opportunity of becoming accepted in the marketplace of ideas. Spiegel, *Municipal Regulation and Civil Liberties,* 1 Current Municipal Problems 173 (1959-1976).

We also take into account the unique nature of State Street. The city has chosen to devote State Street to uses which emphasize public discussion and communication, and peaceable assembly; uses firmly protected by the first amendment. "Such use of the streets and public places has, from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens." *Hague v. Committee For Industrial Organization,* 307 U.S. 496, 515 (1939).

### III.

### VAGUENESS:  WISCONSIN CASE LAW

This is a case of first impression in Wisconsin.[4] The city, however, cites us to decisions sustaining regulations which it argues are similar to sec. 24.04(1), MGO.

In *State v. Givens,* 28 Wis. 2d 109, 135 N.W.2d 780, (1965), *State v. Zwicker,* 41 Wis. 2d 497, 164 N.W.2d 512, *appeal dismissed,* 396 U.S. 26 (1969), and *Zwicker v. Boll,* 270 F. Supp. 131 (1967), *aff'd per curiam,* 391 U.S. 353 (1968), the courts sustained Wisconsin's disorderly conduct statute, sec. 947.01, Stats., against vagueness challenges.

Section 947.01, Stats. (1967), provided:

---

[4]The Eastern District federal court did declare unconstitutionally vague and overbroad a city of Milwaukee ordinance which prohibited "loud" and "boisterous" language. *Gardner v. Ceci,* 312 F. Supp. 516, 518 (E.D. Wis. 1970).

Whoever does any of the following may be fined not more than $100 or imprisoned not more than 30 days:

(1) In a public or private place, engages in violent, abusive, indecent, profane, boisterous, *unreasonably loud* or otherwise disorderly conduct under circumstances in which such conduct tends to cause or provoke a disturbance. (Emphasis added.)

This statute differs significantly from sec. 24.04(1), MGO, in that it proscribes unreasonably loud conduct as disorderly conduct only if, under the circumstances, the conduct tends to cause or provoke a disturbance. Rockford's anti-noise ordinance survived a vagueness challenge because it was interpreted to prohibit only "actual or imminent" interference with the peace and good order of a school. *Grayned,* 408 U.S. at 111–12. [5] Section 24.04(1), MGO, has not been so interpreted, nor do the stipulated facts reveal that the ordinance has been so applied.

In *State v. Migliorino,* 150 Wis. 2d 513, 442 N.W.2d 36, *cert. den.,* 107 L. Ed. 2d 560 (1989), the court upheld the criminal trespass to a medical facility statute, sec. 943.145, Stats. Section 943.145(2) provides:

Whoever intentionally enters a medical facility without the consent of some person lawfully upon the premises, under circumstances tending to create or provoke a breach of the peace, is guilty of a Class B misdemeanor.

---

[5]Rockford's antinoise ordinance read: " '[N]o person, while on public or private grounds adjacent to any building in which a school or any class thereof is in session, shall willfully make or assist in the making of any noise or diversion which disturbs or tends to disturb the peace or good order of such school session or class thereof . . ..' Code of Ordinances, c 28, sec. 19.2(a)." *Grayned v. City of Rockford,* 408 U.S. 104, 107–08 (1972).

In *Migliorino*, the court held that "[t]he medical facilities as defined in the statute are undoubtedly nonpublic forums." 150 Wis. 2d at 527, 442 N.W.2d at 42. *Migliorino*, is therefore inapposite.[6] State Street is a public forum. Streets, "time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. *Hague v. CIO*, 307 U.S. 496, 515 . . . (1939)." *Grayned*, 408 U.S. at 115 (quoting *Kunz v. New York*, 340 U.S. 290, 293 (1951)). *See* Kalven, *The Concept of the Public Forum: Cox v. Louisiana*, 1965 Sup. Ct. Rev. 1.

The city argues that the circuit court's requirement of specificity is contrary to *Milwaukee v. K.F.*, 145 Wis. 2d 24, 33, 426 N.W.2d 329, 333 (1988). In *K.F.*, the court concluded that the appellants lacked standing to challenge the vagueness of the city's curfew ordinance because the ordinance, as applied to them, clearly proscribed their conduct. *Id.* at 39, 426 N.W.2d at 335–36. *K.F.* is therefore inapposite because the city does not claim that the defendants do not have standing to challenge sec. 24.04(1), MGO, as being void for vagueness.

## IV.

## VAGUENESS: NOISE REGULATION

Noise regulation poses special problems of draftsmanship and enforcement. *People v. New York Trap Rock Corp.*, 442 N.E.2d 1222, 1226 (N.Y. 1982). "The

---

[6]Even as applied, one member of the court concluded that the phrase "under circumstances tending to create or provoke a breach of the peace" was unconstitutionally vague. *State v. Migliorino*, 150 Wis. 2d 513, 546, 442 N.W.2d 36, 50 (1989) (Ceci, J., dissenting). Justice Ceci concluded that sec. 943.145(2), Stats., "is so obscure that people of common intelligence must necessarily guess as to its meaning and differ as to its applicability." *Id.*

nature of sound makes resort to broadly stated definitions and prohibitions not only common but difficult to avoid." *Id.*

There are two circumstances in which a broadly stated noise prohibition may withstand a vagueness challenge: the regulation applies within a limited context which conveys an accepted or well-understood meaning of otherwise imprecise words, *Trap Rock Corp.,* 442 N.E.2d at 1226, or, the prohibition is narrowed by qualifying language, or by judicial construction, *see, e.g., Grayned,* 408 U.S. at 111-12 (court assumed that state court would interpret "diversion tending to disturb the peace" to prohibit only actual or imminent interference with peace or good order).

Statutes or ordinances banning noise as "loud," "excessive," "unusual," "unnecessary" or in similar words or expressions of general import, have been upheld if applied within a clearly recognized limited context. In *Kovacs v. Cooper,* 336 U.S. 77 (1949), the Court sustained an ordinance which prohibited the use upon a motor vehicle of any instrument emitting "loud and raucous noises." The court was careful to point out that the ordinance did not restrict the communication of ideas or discussion of issues by the human voice. *Kovacs* at 89. *See also People v. Byron,* 215 N.E.2d 345 (N.Y. 1966) (excessive or unusual "noise" emanating from a vehicle muffler); *State v. Dorsett,* 164 S.E.2d 607, (N.C. App. 1968) ("unreasonably loud, disturbing and unnecessary noise" created by a motorcycle); *Town of Islip v. Vollbracht's Dairy, Inc.,* 363 N.Y.S.2d 307, 308 (N.Y. D. Ct. 1975) (air conditioning apparatus creating "unreasonable or unnecessary noise of . . . unreasonable extent and duration"); *Weil v. McClough,* 618 F. Supp. 1294 (D.C.N.Y. 1985) (ordinance prohibiting honking of

motor vehicle horn, "except as a sound signal of imminent danger"); *Furumoto v. Lyman,* 362 F. Supp. 1267 (N.D. Cal. 1973) (private university's regulations proscribing disruption of university function or activity); *Reeves v. McConn,* 631 F.2d 377 (5th Cir. 1980) (ordinance limiting the volume of amplified sound).

In *Grayned,* the Court sustained the city's ordinance against a vagueness attack, although it conceded that the question was "close." 408 U.S. at 109. The Court indicated that it was troubled by the "imprecision" of the phrase "tends to disturb." *Id.* at 111. The Court concluded, however, that the Illinois Supreme Court would interpret the Rockford ordinance to prohibit only actual or imminent interference with the peace or good order of the school. The court said that "[g]iven this 'particular context,' the ordinance gives 'fair notice to those to whom [it] is directed.' " *Id.* at 112 (quoting *American Communications Asso. v. Douds,* 339 U.S. 382, 412 (1950)). The court said that the ordinance forbade the noisy or diversionary activity at fixed times—when school is in session—and at a sufficiently fixed place—"adjacent" to the school. 408 U.S. at 111. The vagueness of 'noises' and 'diversions' "is dispelled by the ordinance's requirements that (1) the 'noise or diversion' be actually incompatible with normal school activities; (2) there be a demonstrated causality between the disruption that occurs and the 'noise or diversion'; and (3) the acts be 'willfully' done." *Grayned,* 408 U.S. 113-14 (footnotes omitted). In contrast, the proscription of sec. 24.04(1), MGO—"making any noise tending to unreasonably disturb the peace and quiet of persons in the vicinity thereof"—is not placed within " 'boundaries sufficiently distinct' for citizens, policemen, juries and appellate judges." *Grayned,* 408 U.S. at 114 (footnote omitted).

We realize that other courts have not recognized the "limited context" distinction. In *State v. Holland,* 331 A.2d 626 (N.J. Super. Ct. App. Div. 1975), the court upheld an ordinance very similar to sec. 24.04(1), MGO. The ordinance prohibited "[t]he making, creation or permitting of any unreasonably loud, disturbing or unnecessary noise." The court, however, sustained the ordinance for the very reason it should have struck it. The court said: "Whether a given noise disturbs the public peace depends upon the circumstances of the particular case, and it is impractical to spell out rigid legislative criteria." *Id.* at 629. The police officer, the prosecutor, the judge, and the jury cannot be allowed to create their own standards of culpability. *City of Milwaukee v. Nelson,* 149 Wis. 2d 434, 446–47, 439 N.W.2d 562, 566, *cert. den.,* 107 L. Ed. 2d. 122 (1989).[7] "[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them." *Grayned,* 408 U.S. at 108. We therefore reject *Holland*'s reasoning.

In *Mann v. Mack,* 202 Cal. Rptr. 296 (Cal. Ct. App. 1984), the court approved a Los Angeles ordinance which made it unlawful for any person "to willfully make . . . any loud, unnecessary, and unusual noise which disturbs the peace or quiet of any neighborhood or which causes discomfort or annoyance to any reasonable person of normal sensitiveness residing in the area." Without analysis, the court relied on the cases we have discussed making the limited context distinction. These cases, therefore, do not support the court's conclusion.

---

[7]The dissent's "case-by-case" approach would provide for government by the "moment-to-moment opinions of a policeman on his beat." *Cox v. Louisiana,* 379 U.S. 536, 579 (1965) (Black J. concurring).

402

Where the statute or ordinance provided no setting from which prohibitions couched in broad, general terms could take on meaning, the regulation did not survive a vagueness challenge. In *Trap Rock Corp.,* an ordinance defined "unnecessary noise" as "any excessive or unusually loud sound or any sound which either annoys, disturbs, injures or endangers, the comfort, repose, health, peace or safety of a person." The court concluded that "[t]his section is permeated with vagueness." 442 N.E.2d at 1226. The court pointed out that a conviction under the ordinance could be supported solely upon the "malice or animosity of a cantankerous neighbor," *id.* at 1227 (quoting *Miller v. Valley Forge Village,* 374 N.E.2d 118, 122 (N.Y. 1978) (Cooke, J. dissenting)), or the "boiling point of a particular person," *id.* (quoting *Ashton v. Kentucky,* 384 U.S. 195, 200 (1966)). *See also United Pentecostal Church v. Steendam,* 214 N.W.2d 866 (Mich. Ct. App. 1974) (anti-noise ordinance held unconstitutionally vague because it was likely to function erratically); *City of Columbus v. Becher,* 180 N.E.2d 836 (Ohio 1962) (ordinance prohibiting keeping any animal or fowl which howls or barks or emits audible sounds to annoyance of inhabitants held too indefinite and broad); *Gardner v. Ceci,* 312 F. Supp. 516 (E.D. Wis. 1970) (disorderly conduct ordinance held vague and overbroad); *United States Labor Party v. Pomerleau,* 557 F.2d 410, 412 (4th Cir. 1977) (amplification regulation void for vagueness and overbreadth where violation depended on subjective opinion of investigator); *Phillips v. Borough of Folcroft, Pennsylvania,* 305 F. Supp. 766 (E.D. Pa. 1969) (ordinance proscribing unnecessary noise found vague and overbroad because it created unlimited discretionary enforcement); *Fratiello v. Mancuso,* 653 F. Supp. 775, 790–91 (D.R.I. 1987) (ordinance prohibiting

"unnecessary noises or sounds . . . which are physically annoying" void for vagueness and overbreadth).

The city and the dissent rely on *Cameron v. Johnson,* 390 U.S. 611, 616 (1968), in which Justice Brennan stated that the word "unreasonably" is "a widely used and well understood word." Here, the trial court distinguished the statute involved in *Cameron* from sec. 24.04(1), MGO, on the grounds that the word "unreasonably" in the city's ordinance lacks "contextual salvation." We agree. We place *Cameron* in that class of cases where vague words of general import are saved by their contextual surroundings. The statute involved in *Cameron* prohibited "picketing . . . in such a manner as to obstruct or unreasonably interfere with free ingress or egress to or from any . . . county . . . courthouses . . .." *Id.* The thrust of the statute was directed at interference with free ingress or egress to and from a courthouse. What constituted interference with ingress or egress to and from a public building was within the knowledge of any person of common intelligence reading the statute. The word "unreasonably" added little, if anything, to the prohibition of the statute, but, because of the context in which the word was used it likewise did not destroy the statute.

Likewise, the word "unreasonably" in sec. 947.01, Stats., adds little to the definition of disorderly conduct, but it does not destroy the statute because it is in a context which gives it shape and form. The second element of the offense of disorderly conduct is that "the conduct of the defendant, under the circumstances as they then existed, tended to cause or provoke a disturbance." Wis. JI—Criminal 1900. In contrast, a person may be guilty of violating sec. 24.04(1), MGO, if any person in the vicinity of the noise is "unreasonably" disturbed thereby irrespective of whether, under the cir-

cumstances, the defendant's conduct tended to cause or provoke a disturbance or disruption. In this case, a complainant concluded that the defendants' musicmaking was disturbing his peace and quiet. The complainant may have been an aficionado of Bach rather than Rock. What to him was noise was another person's music.

Section 24.04(1) MGO, has the potential to apply to the speech of others the personal tastes and biases of the listener. The first amendment forbids the government to ban speech. What government cannot do directly it cannot do in the guise of a statute or ordinance so vague that its application has no discernible boundaries.

## V.

## APPLICATION OF PRINCIPLES TO SECTION 24.04(1), MGO

Section sec. 24.04(1), MGO, provides that "[n]o person shall make or assist in making any noise tending to unreasonably disturb the peace and quiet of persons in the vicinity thereof . . .." The ordinance is not written specifically for any context, as was Rockford's anti-noise ordinance, which was written specifically for the school context, *Grayned,* 408 U.S. at 112; we have a vague, general "breach of the peace" ordinance, *id.*

Nor does sec. 24.04(1), MGO, forbid deliberately noisy activity at "fixed times," at a "fixed place," *Grayned,* 408 U.S. at 111.

The ordinance does not proscribe only noise tending to cause or provoke an immediate or "imminent threat of violence," *Grayned,* 408 U.S. at 111, or public disturbance. These defendants could not know in advance whether their speech would disturb the peace and quiet of persons in the vicinity; nor can others who use State

Street for artistic, political, or recreational purposes. Whether the ordinance is violated by such activities is not judged by an objective standard but by the subjective reaction of "persons in the vicinity."

We therefore conclude that sec. 24.04(1), MGO, does not place noise within boundaries sufficiently distinct for citizens, police officers, juries, and appellate judges to determine what conduct it proscribes. Section 24.04(1) is unconstitutionally vague.

*By the Court.*—Order affirmed.

EICH, C.J. *(dissenting).* Baumann's "vagueness" challenge to the ordinance, in its entirety, is that because the ordinance contains no "time, place and manner" restrictions, its "lack of specificity" impermissibly delegates to Madison police officers "discretion in choosing whom to prosecute for . . . violating the ordinance."

The majority has ruled in Baumann's favor and in doing so: (1) holds that the presumption of constitutionality usually accompanying legislative acts does not attach to the Madison ordinance because of its infringement on the exercise of First Amendment rights, and, as a result, the city has the burden of establishing that the ordinance does not violate the constitution; (2) rejects the principle that whether a given noise disturbs the public peace depends upon the circumstances of the particular case; and (3) appears to hold that, to survive a constitutional challenge, an anti-noise ordinance must be (a) "written specifically for [a particular] context," majority op. at 405, (b) limited in its applicability to "fixed times" and "fixed place[s]," *id.,* (c) proscribing only noises "tending to cause or provoke an immediate or 'imminent threat of violence' . . . or public disturbance," *id.,* and (d) drawn so that users of a public street

406

for artistic performances or discussions of public issues could "know in advance whether their speech would disturb the peace and quiet of persons in the vicinity." *Id.*

I am unable to join in that opinion because the City of Madison has satisfied me that the ordinance is not so vague that one can only guess at its meaning.

A statute or an ordinance is unconstitutionally vague only if persons of ordinary intelligence must necessarily guess as to its meaning and differ as to its applicability. *State v. Zwicker,* 41 Wis. 2d 497, 507, 164 N.W.2d 512, 517, *appeal dismissed,* 396 U.S. 26 (1969). We do not, however, impose impossible standards of specificity, *Jordan v. De George,* 341 U.S. 223, 231 (1951), and laws will not be struck down simply by a showing that the boundaries of the area of proscribed conduct are somewhat hazy. *Milwaukee v. K.F.,* 145 Wis. 2d 24, 33, 426 N.W.2d 329, 333 (1988). A fair degree of definiteness is all that is required. *Id.* Finally I note that, to a degree at least, vagueness is more tolerable in a civil law than in laws with criminal sanctions. This is so because the consequences of imprecision are less severe in the former case. *Brockert v. Skornicka,* 711 F.2d 1376, 1381 (7th Cir. 1983).

The Madison ordinance prohibits persons from making, or assisting in the making of, noise of such a nature as "to unreasonably disturb the peace and quiet of persons in the vicinity thereof," unless the noise cannot be prevented and is necessary to protect property, health or safety. It appears in a chapter of the Madison General Ordinances entitled "OFFENSES AGAINST PEACE AND QUIET," and I see little difference between the conduct it proscribes and that proscribed by the statute upheld in *Zwicker,* which punished—*as a crime* —"unreasonably loud . . . conduct under circum-

407

stances in which such conduct tends to cause or provoke a disturbance . . .." Sec. 947.01, Stats. (1967).

Like the criminal statute[1] in *Zwicker,* the Madison ordinance—which provides only civil penalties—"does not imply that all [noise] which tends to annoy another is [a violation]." *Zwicker,* 41 Wis. 2d at 508, 164 N.W.2d at 517. Rather, only such conduct as "unreasonably disturb[s] the peace and quiet of persons in the vicinity" is proscribed. Noise so loud as to unreasonably disturb the peace and quiet of even a single person in the area should be no less subject to regulation by the community than noise or other conduct that "tends to cause or provoke a disturbance" involving several people.

The majority quotes George Gershwin. Majority op. at 395 n.2. While my own admiration for Gershwin's music is, I am sure, no less than that of the author of the majority opinion, I believe it is entirely possible that even a Gershwin melody, played at such ear-splitting levels as to unreasonably disturb the peace, might well constitute the type of "noise" that the city may reasonably regulate.

The Madison ordinance does not regulate the nature or content of music or any other protected form of "speech." It reaches only noise that unreasonably disturbs another's peace and quiet; and in my opinion it does so under standards that are sufficiently specific to survive Baumann's constitutional challenge.

I disagree with Baumann's assumption, apparently adopted by the majority, that the word "unreasonably" is a term so vague that one must necessarily guess at its meaning. Instead, I agree with Justice Brennan who, writing for the Court in *Cameron v. Johnson,* 390 U.S.

---

[1]The statute, sec. 947.01, Stats. (1967), punished "disorderly conduct," as defined therein, by a fine of not more than $100 or imprisonment for not more than thirty days.

611, 616 (1968), stated that "[i]t is a widely used and well understood word" and quoted a district judge's remark that "[t]he word 'unreasonable' seems to have been well understood by the founders of the Republic when they used it in the Fourth Amendment, where it remains, and is enforced, as it should be, to this day." *Id.* at 616 n.7, quoting *Cameron v. Johnson,* 262 F. Supp. 873, 879 (S.D. Miss. 1966). As in *Cameron,* the word "unreasonably" does not stand alone in the ordinance. It is even more readily understandable when taken in context—that is, that the noise is prohibitable only when it "unreasonably disturb[s] the peace and quiet of persons in the vicinity thereof."

In *Grayned v. City of Rockford,* 408 U.S. 104 (1972), the Court upheld a Rockford, Illinois, noise ordinance prohibiting people from "willfully mak[ing] or assist[ing] in the making of any noise or diversion" adjacent to school grounds "which disturbs or tends to disturb the peace or good order of such school session or class thereof . . .." *Id.* at 107–08. Noting that because we are "[c]ondemned to the use of words, we can never expect mathematical certainty from our language," the Court concluded that the ordinance was not unconstitutionally vague. *Id.* at 110. As the majority opinion in this case notes, the *Grayned* Court dispelled its initial concern over the possible vagueness of the terms "noise" and "diversion" by noting that not all noises and diversions were prohibited by the Rockford ordinance, but only those that were (a) willfully done, (b) actually incompatible with school activities, and (c) caused a disruption of those activities. *Id.* at 113–14.

So, too, the Madison ordinance does not prohibit all noise—or music—that someone might consider annoy-

ing. It only prohibits persons from (a) willfully[2] (b) making or assisting in the making of noise (c) that causes an unreasonable disturbance (d) to the peace and quiet of persons in the vicinity of the noise, (e) and which is not justified as necessary for the protection of property, health or safety.

I would hold, therefore, that the Madison ordinance, like Rockford's, "does not permit people to 'stand on a public sidewalk . . . only at the whim of [a] police officer,' " *Grayned* at 114, quoting *Shuttlesworth v. Birmingham*, 382 U.S. 87, 90 (1965); rather, there must be a demonstrated intentional and unreasonable disturbance of the peace and quiet of persons in the vicinity in order for the prohibition to apply. It is true in this case, as it was in *Grayned:*

> As always, enforcement requires the exercise of some degree of police judgment, but, as confined, that degree of judgment here is permissible. The . . . City Council has made the basic policy choices, and has given fair warning as to what is prohibited. "[T]he ordinance defines boundaries sufficiently distinct" for citizens, policemen, juries, and appellate judges. It is not impermissibly vague. *Id.* at 114, quoting *Chicago v. Fort*, 262 N.E.2d 473, 476 (Ill. 1970).

The constitution does not insist upon the impossible; it asks only what the subject will reasonably permit. In my opinion, the Madison ordinance is not unconstitutional *per se.*

It is, on its face, a constitutionally valid approach to an invasive noise problem that can be attested to by any walker of the city's streets. Whether, in a particular case,

---

[2]While the words "willful" or "intentional" do not appear in the ordinance, its language—"no person *shall make or assist*"—plainly require a volitional act. (Emphasis added.)

the "boombox" or the car or apartment stereo blaring out of open windows—or even, as here, the "live" performance of music—violates the ordinance will, as it must, be determined on a case-by-case basis.