**ANABELL'S ICE CREAM CORP.,**
Louis Lopez, Juliette Lopez

v.

**The TOWN OF GLOCESTER.**

No. CA 95–0265ML.

United States District Court,
D. Rhode Island.

April 4, 1996.

---

John W. Dineen, Providence, RI, for Plaintiffs.

William G. Brody, Providence, RI, for Defendant.

## MEMORANDUM AND ORDER

LISI, District Judge.

This matter is before this court on the plaintiffs' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The plaintiffs, the Anabell's Ice Cream Corporation and its owner and operators, Juliette and Louis Lopez, seek injunc-

tive relief precluding the enforcement of an ordinance enacted by the defendant, the Town of Glocester, as well as a declaratory judgment that the ordinance violates the First Amendment of the United States Constitution. The ordinance prohibits the use of electronic noisemaking devices by merchants. For the reasons set forth below, the plaintiffs' motion is granted.

## I. SUMMARY JUDGMENT

Before addressing the legal grounds on which the plaintiffs claim they are entitled to judgment, it is incumbent upon this court to outline the familiar standards under which summary judgment motions are reviewed.

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). It is well-established that the party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file" and any accompanying affidavits "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (internal quotation marks omitted). Once the movant has satisfied this burden, " 'the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue.' " *Blackie v. State of Maine*, 75 F.3d 716, 721 (1st Cir.1996) (quoting *National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995)); *see also Equal Employment Opportunity Comm'n v. Steamship Clerks Union, Local 1066*, 48 F.3d 594, 602 (1st Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 65, 133 L.Ed.2d 27 (1995).

■ In this case, the plaintiffs identify two alternative grounds on which such a motion could be granted, and, therefore, have properly informed the court as to the bases for their motion. The defendant seemingly contends, however, that the plaintiffs have not met their burden with respect to identifying those portions of the pleadings demonstrating an absence of a dispute as to any material facts. The defendant apparently grounds this assertion on its contention that the plaintiffs merely "purport[ed] to adopt as true and unchallenged numerous allegations which have not been established by any evidence." Defendant's Memo, p. 2.

■ The defendant's contention is without merit. It is well-settled that "the burden on the moving party may be discharged by 'showing' "—that is, pointing out to the district court—that there is an absence of evidence to support the "nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. at 325, 106 S.Ct. at 2554. Indeed, a summary judgment motion "may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c) is satisfied." *Id.* at 323, 106 S.Ct. at 2553. In submitting its statement of undisputed facts, which directs this court to the pleadings, the plaintiffs have satisfied their burden.

■ Under the proper analysis, the burden then shifts to the nonmoving party. It is well-settled that a nonmoving party cannot avoid summary judgment merely by promising to produce admissible evidence at trial, but rather, must present affirmative evidence in order to defeat a properly supported motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986); *Rodriguez–Pinto v. Tirado–Delgado*, 982 F.2d 34, 39 (1st Cir.1993). This requires the nonmovant to "go beyond the pleadings" and direct the court to specific facts that demonstrate that there is a trialworthy issue. *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553.

■ In the case at bar, the defendant has failed to meet its burden under these standards. The defendant has not offered this court any "evidence which would be admissible at trial to make out the requisite issue of material fact." *Kelly v. United States*, 924

F.2d 355, 357 (1st Cir.1991); *see also Rodri-guez–Pinto v. Tirado–Delgado,* 982 F.2d at 39. Instead, the defendant apparently purports to rely on its assertion that the plaintiffs have failed to sustain their burden as the moving party. Moreover, the defendant has also failed to comply with Local Rule 12.1, which requires any party opposing a motion for summary judgment to "serve and file, together with the opposing memorandum of law … a concise statement of all material facts as to which he contends there is a genuine issue necessary to be litigated." D.R.I.Loc.R. 12.1(a)(2).

The consequences of the defendant's multiple failures are clear. Given the defendant's failure to contest the plaintiffs' statement of undisputed facts, the jurisprudence of both Rule 56 and Local Rule 12.1 provide that the movant's version of the facts may be, and is in this case, taken as true.[1] *See Kelly v. United States,* 924 F.2d at 358. As such, disposition of this case on summary judgment is appropriate. *See id.*

## II. BACKGROUND

Anabell's Ice Cream Corporation ("Anabell's") is a Rhode Island Corporation. Anabell's is in the business of selling ice cream from three to four vehicles which travel throughout the towns of Burriville, Woonsocket, and Glocester, Rhode Island. As the vehicles arrive or remain at retail locations, an electronic device in the vehicles plays various musical tunes, which serve to advertise the plaintiffs' business and announce the arrival of the truck at a particular location.

The plaintiffs, defined as peddlers under the defendant's ordinances,[2] have been duly licensed to operate their business in the Town of Glocester for a number of years. On April 20, 1995, the defendant issued a license to the plaintiffs allowing them to operate in Glocester in 1995. Prior to the issuance of this license, the defendant enacted an amendment to its ordinances which provided that "[n]o peddler, hawker, or other persons requiring a license under this ordinance shall attempt to sell his/her wares by means of any loudspeaker, voice amplification system or electronic noisemaking device intended to attract public attention, nor shall he/she create a nuisance situation." GLOCESTER, R.I., HAWKERS AND PEDDLERS ORDINANCE, § 6.

Plaintiffs filed suit on May 12, 1995, seeking, *inter alia,* declaratory and injunctive relief against the defendant on the grounds that the amended ordinance interfered with their First Amendment rights. On October 17, 1995, the plaintiffs filed an amended complaint in which they also asserted that the ordinance violated Rhode Island law.

## III. DISCUSSION

The plaintiffs offer two alternative bases on which they assert an entitlement to summary judgment. First, the plaintiffs contend that the ordinance in question is preempted by state law, and therefore invalid. Second, the plaintiffs aver that the ordinance amounts to an unconstitutional restriction on their First Amendment rights. Since disposition in plaintiffs' favor on the state law claim would obviate the need of deciding the constitutional question, this court proceeds to address the preemption claim first.

### A. *State Law Preemption*

Preemption serves as a limitation on the exercise of inherent police powers by a governmental body when the purported regulation regulates subject matter on which superior governmental authority exists. *See Town of East Greenwich v. O'Neil,* 617 A.2d 104, 109 (R.I.1992). In this context, the relationship between state laws and local ordinances is well-settled: "It is declared to be a fundamental principle that municipal ordinances are inferior in status and subordinate

---

1. Local Rule 12.1 provides that in determining any motion for summary judgment, "the court may assume that the facts as claimed by the moving party are admitted to exist without controversy except as and to the extent that such facts are controverted by affidavit filed in opposition to the motion, or by other evidentiary materials…." D.R.I.Loc.R. 12.1(d).

2. A peddler is defined as "one selling or offering for sale any goods, wares or merchandise whatsoever on any public street, highway or right-of-way from a vehicle, cart or any other conveyance which is not stationary." GLOCESTER, R.I., HAWKERS AND PEDDLERS ORDINANCE, § 1.

to the laws of the state.... It is also recognized in this jurisdiction that an ordinance inconsistent with a state law of general character and state-wide application is invalid." *Wood v. Peckham,* 80 R.I. 479, 98 A.2d 669, 670 (1953); *see also Town of East Greenwich v. O'Neil,* 617 A.2d at 109.

■ In this case, the plaintiffs contend that the ordinance in question is expressly preempted by § 45–6–6 of the Rhode Island General Laws. This statute provides that "[n]o ordinance or regulation whatsoever, made by a town council, shall impose or at any time be construed to continue to impose, any penalty for the commission or omission of any act punishable as a crime, misdemeanor, or offense, by the statute law of the state." R.I.GEN.LAWS § 45–6–6. The plaintiffs direct the court's attention to two Rhode Island statutes, each of which they allege criminalizes the acts proscribed by the ordinance and which they contend serve as the requisite predicate offenses for preemption under § 45–6–6.

The plaintiffs first contend that § 11–45–1 of the Rhode Island General Laws satisfies the underlying state law requirement of § 45–6–6, thereby preempting the ordinance. This statute creates criminal liability—in the form of a misdemeanor—for individuals who

engage in disorderly conduct.[3] Specifically, the plaintiffs argue that subsection (a)(2) of this statute, which defines disorderly conduct to include the disturbance of another through the making of loud and unreasonable noise, serves to criminalize the conduct proscribed by the ordinance. *See* R.I.GEN.LAWS § 11–45–1(a)(2).

The plaintiffs further contend that § 31–45–1 of the Rhode Island General Laws could equally serve as the necessary predicate for preemption via § 45–6–6. This statute establishes explicit noise limits for motor vehicles and gives rise to criminal misdemeanor liability for all those who violate them.[4] The plaintiffs contend that the noise limit proscriptions in the statute apply to the "total noise" from a vehicle, *see* R.I.GEN.LAWS § 31–45–3, and, therefore, that the statute criminalizes the subject matter that the ordinance seeks to address.

■ This court need not reach the question of whether either of these statutes serves to invoke the preemption provision of § 45–6–6. The question of whether there has been preemption in a given field is one of legislative intent. *See State v. Berberian,* 100 R.I. 274, 214 A.2d 465, 466 (1965); *Wood v. Peckham,* 98 A.2d at 671. While a careful reading of § 45–6–6, taken by itself, clearly

3. The statute provides that a person commits disorderly conduct if he or she intentionally, knowingly, or recklessly:
   (1) Engages in fighting or threatening, or in violent or tumultuous behavior; or
   (2) In a public place or near a private residence that he or she has no right to occupy, disturbs another person by making loud and unreasonable noise which under the circumstances would disturb a person of average sensibilities; or
   (3) Directs at another person in a public place offensive words which are likely to provoke a violent reaction on the part of the average person so addressed; or
   (4) Alone or with others, obstructs a highway, street, sidewalk, railway, waterway, building entrance, elevator, aisle, stairway, or hallway to which the public or a substantial group of the public has access or any other place ordinarily used for the passage of persons, vehicles, or conveyances; or
   (5) Engages in conduct which obstructs or interferes physically with a lawful meeting, procession, or gathering; or
   (6) Enters upon the property of another and for a lascivious purpose looks into an occu-

pied dwelling on the property through a window or other opening; or
   (7) Exposes his or her genitals to the view of others under circumstances in which his or her conduct is likely to cause affront, distress, or alarm to such other persons.
R.I.GEN.LAWS § 11–45–1(a).

4. The statute provides that:
   (a) No person shall operate a motor vehicle, nor shall the owner of any vehicle allow such a vehicle to be operated, at any time, or under any condition of grade, load, acceleration, or deceleration, in such a manner as to exceed the following noise limit based on a distance of fifty feet (50′) from the center of the lane of travel within the speed limit. For the purposes of this section, "dbA" means decibels measured with a calibrated sound level meter weighted to the "A" scale.
   (b) In speed zones of thirty-five miles per hour (35 mph) or less, not more than eighty-six (86) dbA. In speed zones of more than thirty-five miles per hour (35 mph), not more than ninety (90) dbA.
R.I.GEN.LAWS § 31–45–1.

indicates a legislative intent to preclude local municipalities from enacting ordinances that address conduct already covered by state law, this statute cannot be read in a vacuum. Indeed, "the chief objective of statutory interpretation is to give effect to the legislative will. To achieve this objective a court must take into account the tacit assumptions that underlie a legislative enactment including not only the general policies but also preexisting statutory provisions." *Passamaquoddy Tribe v. State of Maine,* 75 F.3d 784, 788–89 (1st Cir.1996) (citations omitted).

As the defendant correctly notes, in order to properly define the reach of the preemptive provisions of § 45–6–6, the statute must be viewed against the backdrop of the statute authorizing the defendant to issue licenses for hawkers and peddlers. In addition to providing the defendant with the general authority to issue and revoke licenses to hawkers and peddlers, the statute also provides that

> the town councils of the towns of Middletown, East Greenwich, and Glocester are hereby authorized to provide, by ordinance, for the discretionary issuance and revocation of licenses to hawkers and peddlers, pursuant to the provisions of this section on a daily or weekly basis, to establish reasonable fees therefor, *and to promulgate by ordinance reasonable rules and regulations with regard to the placement, duration, location, number, and operation of those licenses within the town*
> . . . .

R.I.GEN.LAWS § 5–11–18 (emphasis added).

It is the emphasized language of the statute that is important for purposes of interpreting the preemptive reach of § 45–6–6. This language provides these three towns with a wider degree of latitude in regulating the "placement, duration, location, number, and operation" of hawkers and peddlers, and expressly authorizes the defendant to enact limitations of the type at issue in this case. This explicit authority serves to trump the general preemptive language of § 45–6–6, rendering it inapplicable in this case.

In this vein, the decision of the Rhode Island Supreme Court in *Berberian* is most instructive. There, a defendant challenged the validity of a traffic regulation enacted by the city of Providence on the grounds that the subject of the regulation had been preempted by state statute. The Rhode Island Supreme Court rejected this argument and declared § 45–6–6 inapplicable. In so doing, the court relied heavily on two factors: (1) that the local ordinance in question did not conflict with any part of the state statute; and, (2) that the state statute expressly authorized the enactment of the local regulations upon which the defendant was convicted. *See State v. Berberian,* 214 A.2d at 467.

Such is the case here. There is no conflict between the ordinance in question and either of the state statutes on which the plaintiffs rely. More importantly, the language of the enabling legislation provides the defendant with the explicit authority necessary to override the general preemptive language of § 45–6–6.

Having found that the ordinance in question conforms with Rhode Island law, this court must now address the plaintiffs' claim that the ordinance violates their First Amendment rights.

### B. *Constitutional Challenge*

#### 1. Speech Classification

As an initial matter, it must be recognized that "[m]usic, as a form of expression and communication, is protected under the First Amendment." *Ward v. Rock Against Racism,* 491 U.S. 781, 790, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661 (1989); *see also IOTA XI Chapter of Sigma Chi Fraternity v. George Mason Univ.,* 993 F.2d 386, 390 (4th Cir.1993). In *Ward,* the Supreme Court noted the important role music has historically played as "speech."

> Music is one of the oldest forms of human expression. From Plato's discourse in the Republic to the totalitarian state in our own times, rulers have known its capacity to appeal to the intellect and to the emotions, and have censored musical compositions to serve the needs of the state. The Constitution prohibits any like attempts in our own legal order.

*Ward v. Rock Against Racism,* 491 U.S. at 790, 109 S.Ct. at 2753. (citations omitted).

As such, the music utilized by the plaintiffs in their efforts at selling ice cream is unquestionably speech and, therefore, subject to the protections of the First Amendment.

■ Notwithstanding this characterization, it is necessary for this court to classify this speech as either commercial or noncommercial. This need arises as a result of the Supreme Court's admonitions as to the importance of distinguishing commercial speech from speech at the First Amendment's core. Indeed, the Court has repeatedly stated that "[c]ommercial speech [enjoys] a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values, and is subject to modes of regulation that might be impermissible in the realm of noncommercial expression." *Florida Bar v. Went For It, Inc.,* —— U.S. ——, ——, 115 S.Ct. 2371, 2375, 132 L.Ed.2d 541 (1995) (citations and internal quotation marks omitted); *see also Board of Trustees of the State Univ. of N.Y. v. Fox,* 492 U.S. 469, 477, 109 S.Ct. 3028, 3033, 106 L.Ed.2d 388 (1989); *Ohralik v. Ohio State Bar Assn.,* 436 U.S. 447, 456, 98 S.Ct. 1912, 1918, 56 L.Ed.2d 444 (1978).

Commercial speech has been alternatively defined as "expression related solely to the economic interests of the speaker and its audience" and as "speech proposing a commercial transaction." *Rubin v. Coors Brewing Co.,* —— U.S. ——, ——, 115 S.Ct. 1585, 1595, 131 L.Ed.2d 532 (1995) (Stevens, J., concurring) (citations and internal quotation marks omitted); *see also L.L. Bean, Inc. v. Drake Publishers, Inc.,* 811 F.2d 26, 32 (1st Cir.), *cert. denied,* 483 U.S. 1013, 107 S.Ct. 3254, 97 L.Ed.2d 753 (1987). The ordinance in this case is clearly aimed at limiting commercial speech. By its own terms, the ordinance prohibits hawkers or peddlers from using any "loudspeaker, voice amplification system or electronic noisemaking device intended to attract public attention" *for the purposes of selling their wares.* GLOCESTER, R.I., HAWKERS AND PEDDLERS ORDINANCE, § 6.

The plaintiffs challenge this classification because they contend that their music has a variety of purposes, and, therefore, should not be labeled as commercial speech. Specif-

ically, they assert that the music serves both as a safety measure, because it announces to the public that their trucks may be stopping, and as pure entertainment. The plaintiffs' contentions are misplaced, however. The plaintiffs themselves indicate that their music serves as an invitation to sale, and allege injury based on decreased sales during a time that they did not play the music.

### 2. Constitutionality of the Ordinance

Constitutional protection for commercial speech is of recent vintage. *See Florida Bar v. Went For It, Inc.,* —— U.S. at ——, 115 S.Ct. at 2375. Prior to 1976, the Supreme Court took the position that "while the First Amendment [guarded] against government restriction of speech in most contexts, 'the Constitution impose[d] no such restraint on government as respects purely commercial advertising.' " *Id.* (quoting *Valentine v. Chrestensen,* 316 U.S. 52, 54, 62 S.Ct. 920, 921, 86 L.Ed. 1262 (1942)). The Court repudiated this position in *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976), a case in which the Court held that "the free flow of commercial information is 'indispensable to the proper allocation of resources in a free enterprise system' because it informs the numerous private decisions that drive the system." *Rubin v. Coors Brewing Co.,* —— U.S. at ——, 115 S.Ct. at 1589 (quoting *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. at 765, 96 S.Ct. at 1827).

■ Notwithstanding the Court's course change, commercial speech is not entitled to the same level of constitutional protection provided to noncommercial speech. Rather, courts are to engage in "intermediate scrutiny" of restrictions on commercial speech, analyzing them under the framework set forth by the Court in *Central Hudson Gas & Electric Corp. v. Public Serv. Comm'n of N.Y.,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). *Florida Bar v. Went For It, Inc.,* —— U.S. at —— ——, 115 S.Ct. at 2375–76. There, the Court stated that

[f]or commercial speech to come within [the First Amendment], it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Rubin v. Coors Brewing Co.,* —— U.S. at ——, 115 S.Ct. at 1589 (quoting *Central Hudson Gas & Electric Corp. v. Public Serv. Comm'n of N.Y.,* 447 U.S. at 566, 100 S.Ct. at 2351). This court must apply this test to the ordinance in question.

▇▇▇ In the present case, there is no dispute as to the fact that the playing of plaintiffs' jingles constitutes lawful activity. Further, the message conveyed is not misleading. Nor is there any dispute as to the asserted government interest: both parties agree that the defendant enacted the ordinance in an effort to protect its citizens from unwelcome and excessive noise. As such, the focus of this court is directed to whether the defendant's interest is substantial, and, if so, whether it is directly advanced by the ordinance in a manner that is not more extensive than necessary.

▇▇▇ It is well-established that a municipality has " 'a substantial interest in protecting its citizens from unwelcome noise.' " *Ward v. Rock Against Racism,* 491 U.S. at 796, 109 S.Ct. at 2756 (quoting *City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 806, 104 S.Ct. 2118, 2129, 80 L.Ed.2d 772 (1984)). This interest is not limited to protecting the "well-being, tranquility, and privacy of the home," but also extends to traditionally public fora such as city streets and parks. *Id.* (citation and internal quotation marks omitted). Thus, the defendant's asserted purpose in enacting the statute is legitimized by prevailing case law.

▇▇▇ The question, however, remains as to whether the ordinance advances this interest with the restraint requisite to pass constitutional muster. In order to do so, the defendant must establish a "reasonable fit"

between its legitimate interests in protecting its citizens from unwelcome and excessive noise and its choice to prohibit commercial speech in an effort to achieve these interests. *City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 416, 113 S.Ct. 1505, 1509–10, 123 L.Ed.2d 99 (1993); *Board of Trustees of the State Univ. of N.Y. v. Fox,* 492 U.S. at 480, 109 S.Ct. at 3034–35. This fit need not be perfect. Instead, the scope of the regulation must be " 'in proportion to the interest served.' " *Board of Trustees of the State Univ. of N.Y. v. Fox,* 492 U.S. at 480, 109 S.Ct. at 3035 (quoting *In re R.M.J.,* 455 U.S. 191, 203, 102 S.Ct. 929, 937, 71 L.Ed.2d 64 (1982)).

The Supreme Court's decision in *Discovery Network* is most helpful in determining whether the defendant has successfully carried its burden. There, the Court was confronted with a challenge to an ordinance that prohibited the distribution of commercial handbills on public property. *See City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. at 412–15, 113 S.Ct. at 1507–09. The ordinance did not restrict the distribution of noncommercial publications. *See id.* The city of Cincinnati, which enacted the ordinance in the interest of safety and protecting the appearance of its streets and sidewalks, asserted that it could permissibly distinguish between commercial and noncommercial speech to promote this interest because of the low value assigned to commercial speech. *See id.* at 418–19, 113 S.Ct. at 1510–11.

The Court rejected this assertion, however, stating that the city's argument attached "more importance to the distinction between commercial and noncommercial speech than our cases [warranted] and seriously [underestimated] the value of commercial speech." *Id.* at 419, 113 S.Ct. at 1511. The Court held that the distinction drawn by the city bore no relationship whatsoever to the particular interests that the city asserted, and therefore amounted to "an impermissible means of responding to the city's admittedly legitimate interests." *Id.* at 424, 113 S.Ct. at 1514. In so doing, the Court noted that "[t]he city has asserted an interest in esthetics, but respondent publishers' newsracks are no greater an eyesore than the newsracks permitted to re-

main on Cincinnati's sidewalks." *Id.* at 425, 113 S.Ct. at 1514.

This case is similar. Here, the defendant, in an attempt to achieve its constitutionally permissible goal of protecting its citizenry from unwelcome and excessive noise, has distinguished between the use of loudspeakers, voice amplification systems, and electronic noisemaking devices by hawkers and peddlers and by nonmerchants. The defendant offers no justification for this distinction, nor does the differentiation between the two types of speech in any way bear a relationship to the defendant's asserted interest. It is readily conceivable that one might use a vehicle in a manner similar to the plaintiffs' operation, but operate the noisemaking device for the purpose of arousing support for a political candidate, to attract attendance at a local charitable event, or simply to provide entertainment. While the "unwelcome and excessive" noise resulting from this non-regulated conduct would have equivalent noise and/or annoyance levels to that of the plaintiffs' ice cream jingles, it would not be subject to restriction under the defendant's ordinance.

The defendant attempts to side-step this outcome by asserting that this ordinance is a valid content-neutral time, place, or manner restriction. In support of this contention, the defendant asserts that no disagreement exists with respect to the prohibited speech, but rather that "the regulation ... applies in general to all sales activities 'on any public street, highway or right-of-way'" in Glocester. Defendant's Memo, p. 6 (quoting GLOCESTER, R.I., HAWKERS AND PEDDLERS ORDINANCE, § 1). The defendant asserts that further support for this argument exists because the ordinance "applies to all hawkers and peddlers, without regard to the nature of the goods, wares or merchandise being sold." *Id.*

The defendant's argument is unpersuasive. It is settled law "that, even when a municipality passes an ordinance aimed solely at the secondary effects of promoted speech (rather than at speech *per se*), the ordinance may nevertheless be deemed content-based if the municipality differentiates between speakers *for reasons unrelated to the legiti-mate interests that prompted the regulation.*" *National Amusements, Inc. v. Town of Dedham,* 43 F.3d at 738. Under the defendant's ordinance, whether an individual may permissibly employ a loudspeaker, voice amplification system, or electronic noisemaking device is determined by the content of the message broadcast—specifically, whether it is intended to attract public attention for the purposes of conducting business. It is clear, therefore, that § 6 of the defendant's ordinances is content-based. As such, it constitutes an illegitimate abrogation of the First Amendment guarantee of freedom of speech.

Having determined that the defendant's ordinance is neither content-neutral nor "narrowly tailored," it cannot be justified as a legitimate time, place, or manner restriction on protected speech. *City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. at 430, 113 S.Ct. at 1517; *see also Matthews v. Town of Needham,* 764 F.2d 58, 60 (1st Cir.1985) (holding that bylaw prohibiting display of noncommercial signs on front laws, while permitting display of commercial signs, is content-based).

## IV. CONCLUSION

For the reasons discussed above, this court declares that the section of Glocester's ordinances prohibiting hawkers and peddlers from selling their wares by means of loudspeakers, voice amplification systems, or electronic noisemaking devices violates the plaintiffs' First Amendment Rights. Accordingly, the plaintiffs' motion for summary judgment is granted, and the defendant is hereafter enjoined from enforcing the ordinance.

SO ORDERED.