131 F.Supp.2d 559 (2001)
HOWARD OPERA HOUSE ASSOCIATES and O'Neill, Crawford & Green, P.C., Plaintiffs,
v.
URBAN OUTFITTERS, INC., Defendant.
No. 2:99-CV-140.
United States District Court, D. Vermont.
February 2, 2001.
*560 Thomas D. Anderson, Sheehey, Furlong, Rendall & Behm, Burlington, VT, for Howard Opera House Associates, plaintiff.
Peter B. Joslin, Barbara Ruth Blackman, Theriault & Joslin, Montpelier, VT, Geoffrey W. Crawford, O'Neill, Crawford & Green, Burlington, VT, for O'Neill, Crawford & Green, P.C., plaintiff.
Marc Burns Heath, Downs, Rachlin & Martin, P.C., Burlington, VT, for Urban Outfitters, Inc., defendant.
Eugene M. Bergman, City Attorney's Office, Burlington, VT, for Burlington, VT, City of, intervenor-plaintiff.

OPINION AND ORDER
SESSIONS, District Judge.
Defendant Urban Outfitters Inc. ("Urban Outfitters") has moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, seeking dismissal of Count II of Plaintiffs' *561 amended complaint, on the grounds that the City of Burlington's ("City's") noise ordinance is unconstitutional, facially and as applied. For the reasons that follow, Urban Outfitters' motion is denied.

Background
This matter involves a dispute in which landlord Howard Opera House Associates ("HOHA") and one of its tenants, the law firm of O'Neill Crawford & Green, P.C. ("OC & G"), claim that Urban Outfitters, another tenant, plays "loud and offensive music," with a high bass volume. First Am.Compl. ¶ 39. Count II of Plaintiffs' amended complaint alleges that by playing unreasonably loud music in violation of the City's noise ordinance, Urban Outfitters breached the provisions of its lease requiring it to comply with all applicable local laws. Urban Outfitters, a retailer of apparel and accessories designed to appeal to youthful customers, claims that the style and volume level of the music it plays is an essential element of its business, giving "voice to youthful rebellion, ideals, and aspirations, ... and, not coincidentally, attract[ing] customers into the store." Mot. for J. on Pleadings at 7 (paper 95). To force it to turn down the volume or face civil and criminal sanctions, it argues, not only encroaches upon its ability to turn a profit, but unconstitutionally infringes upon its free speech rights.
On April 28, 1999 Urban Outfitters received a noise citation from the City for playing "loud music" at its Burlington store, in violation of section 21-13 of the Burlington Code.[1] A civil enforcement action was commenced before the State Judicial Bureau. At Urban Outfitters' request, adjudication of this municipal complaint has been continued, pending a determination in this Court of the constitutionality of the ordinance.
On May 4, 1999, HOHA and OC & G filed this suit against Urban Outfitters. *562 Urban Outfitters has moved to dismiss Count II of the complaint, arguing that the ordinance's ban on "loud or unreasonable noise" is unconstitutionally vague and overbroad. In opposition HOHA, OC & G and the City (allowed to intervene in this action for the limited purpose of defending the constitutionality of its ordinance) contend first that the Court should abstain under the Younger doctrine. See Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). They further argue that Urban Outfitters' loud music is commercial expression, and that the ordinance is constitutional facially and as applied.

Discussion

I. Rule 12(c)

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). The standard applicable to a Rule 12(c) motion is the same as for a Rule 12(b)(6) motion to dismiss: all allegations contained in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the nonmoving party. See Sheppard v. Beerman, 94 F.3d 823, 827 (2d Cir.1996). A court should grant the motion where "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." Id.See also, Conley v. Gibson 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

II. Younger doctrine

In Younger v. Harris, the Supreme Court held that, absent extraordinary circumstances, a federal court may not enjoin an ongoing state criminal proceeding. Younger, 401 U.S. at 45, 91 S.Ct. 746. See also New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 364, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) ("NOPSI"). The doctrine has been interpreted to include proceedings for declaratory as well as injunctive relief directed at state criminal proceedings, see Samuels v. Mackell, 401 U.S. 66, 73, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); state contempt proceedings, see Juidice v. Vail, 430 U.S. 327, 335, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); enforcement of state court orders, see Pennzoil Co. v. Texaco Inc., 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987); and certain state civil proceedings, see Huffman v. Pursue Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). There are limits to the Younger doctrine's reach, however. In NOPSI, the Supreme Court rejected the notion that the availability or even the pendency of state judicial proceedings prevents the federal courts from acting. See NOPSI, 491 U.S. at 373, 109 S.Ct. 2506.
The principles of comity and equity inform Younger and its progeny. Equity requires federal courts to refrain from acting where there is an adequate remedy at law and no irreparable injury will result. Younger, 401 U.S. at 43-44, 91 S.Ct. 746. Comity requires federal courts to show proper respect for state institutions and state functions. Id., 401 U.S. at 44, 91 S.Ct. 746. Neither comity nor equity is at stake in this case.
Urban Outfitters has not raised its constitutional argument to circumvent the state's civil enforcement action. Its constitutional argument has been interposed as a defense to one count of a multi-count civil suit brought against it by private parties. Urban Outfitters did not initiate the lawsuit. The City is involved in the lawsuit only because it successfully moved to intervene. HOHA and OC & G argue that Urban Outfitters' motion for judgment on the pleadings is the functional equivalent of a declaratory judgment action, but no party in this case is seeking equitable relief, whether by claim or counterclaim. No one is seeking this Court's intercession in an ongoing state proceeding. Given the federal courts' "virtually unflagging obligation" to exercise jurisdiction this Court cannot properly abstain from hearing this case. Colorado River Water Conservation *563 Dist. v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

III. Freedom of Speech

A. The ordinance implicates the First Amendment

The City's noise control ordinance bans "any loud or unreasonable noise," defined as noise which "disturbs, injures or endangers the peace or health of another, or which endangers the health, safety or welfare of the community." Burlington Code, § 21-13(b)(1). The ordinance also prohibits sound from radios, television sets, musical instruments, phonographs and the like which "disturb[s] the peace, quiet, or comfort of the public," or which "is audible through walls between units within the same building, from another property or from the street." Id., § 21-13(b)(2)(a). Second and subsequent offenses are punishable criminally. Id., § 21-13(e)(2).[2]
The playing of music enjoys First Amendment protection. See Ward v. Rock Against Racism, 491 U.S. 781, 790, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) ("Music is one of the oldest forms of human expression.") Moreover, the City's ordinance restricts the playing of music is which is audible from the street, by long tradition a public forum. See § 21-13(b)(2)(a). A government's right to regulate expression in a public forum is also limited by the First Amendment. See Rock Against Racism, 491 U.S. at 791, 109 S.Ct. 2746; Grayned v. City of Rockford, 408 U.S. 104, 115, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). The ordinance bans communication that is conducted in a certain manner (unreasonably noisily) and that is audible in certain places (through walls, from another property, or from the street). The ordinance thus implicates the First Amendment; the Court must examine whether the City's restriction on speech violates the First Amendment.

B. The challenged provisions of the ordinance are not aimed at commercial expression

The challenged provisions of the ordinance apply to any entity that engages in the prohibited conduct, whether individual or corporate, whether engaged in communicative activity designed to sell a product or to promote an idea. The restrictions are not directed to commercial establishments or products in particular, distinguishing these provisions from regulations at issue in such commercial speech cases as Board of Trustees of State Univ. of New York v. Fox, 492 U.S. 469, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989) (state university regulation of commercial enterprises operating on school property); Bad Frog Brewery, Inc. v. New York State Liquor Auth., 134 F.3d 87 (2d Cir.1998) (state liquor authority's ban on beer bottle label depicting frog making rude gesture); and Anabell's Ice Cream Corp. v. Town of Glocester, 925 F.Supp. 920 (D.R.I.1996) (town ordinance banning use of amplified devices by hawkers and peddlers).
The principal question in this case thus is not the extent to which Urban Outfitters enjoys First Amendment protection, i.e., whether it engages in commercial or non-commercial speech when it plays music in its stores. The principal question is whether the City's ordinance impermissibly "abridges expression that the First Amendment was meant to protect." First Nat'l Bank v. Bellotti, 435 U.S. 765, 776, 784, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978) (speech that would otherwise be protected by the First Amendment does not lose that protection based on the identity of the speaker). See also, City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 416, n. 11, 113 S.Ct. 1505, 123 L.Ed.2d 99 *564 (1993) (regulation that is not aimed at content or effects of commercial speech would likely be evaluated under standards applicable to regulation of fully protected speech); Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 505, n. 11, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) (distinguishing "commercial speech" and entities having a "commercial interest" in protected speech).

C. A facial overbreadth challenge is not appropriate

Urban Outfitters has argued that certain provisions of the City's noise ordinance are unconstitutional on their face. An ordinance may be facially invalid "either because it is unconstitutional in every conceivable application, or because it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally `overbroad.'" Members of City Council v. Taxpayers for Vincent, 466 U.S. 789, 796, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). Urban Outfitters does not contend that the ordinance could never be validly applied, but has asserted that the ordinance is written so broadly that it may inhibit the protected speech of third parties not before the Court. Def.'s Mem. at 7-8.
The ordinance's primary aim is the regulation of conduct, the production of noise, which incidentally implicates free speech rights. "[W]here conduct and not merely speech is involved, ... the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." Broadrick v. Oklahoma, 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), quoted in Taxpayers, 466 U.S. at 799-800, 104 S.Ct. 2118. Urban Outfitters does not dispute that the City has the power to regulate noise. It takes issue with the ordinance's lack of standards, and the unfettered discretion accorded to enforcing officers. Like the challengers in Taxpayers, however, Urban Outfitters has "failed to identify any significant difference between [its] claim that the ordinance is invalid on overbreadth grounds and [its] claim that it is unconstitutional when applied." Id., 466 U.S. at 802, 104 S.Ct. 2118. Because Urban Outfitters has not shown "a realistic danger that the ordinance will significantly compromise recognized First Amendment protections of individuals not before the Court," id., it may not maintain a facial overbreadth challenge.

D. The ordinance is not void for vagueness

"[A]n enactment is void for vagueness if its prohibitions are not clearly defined." Grayned, 408 U.S. at 108, 92 S.Ct. 2294. Due process demands that laws "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited," and "provide explicit standards for those who apply them." Id., 408 U.S. at 108-09, 92 S.Ct. 2294. Where First Amendment freedoms are involved, a vague law causes citizens to "`steer far wider of the unlawful, zone' than if the boundaries of the forbidden areas were clearly marked." Baggett v. Bullitt, 377 U.S. 360, 372, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964) (quoting Speiser v. Randall, 357 U.S. 513, 526, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958)), quoted in Grayned, 408 U.S. at 109, 92 S.Ct. 2294.
In determining whether an ordinance is unconstitutionally vague, a court must examine the words of the ordinance itself, as well as interpretations of analogous laws, keeping in mind that "[c]ondemned to the use of words, ... mathematical certainty" is unattainable. Grayned, 408 U.S. at 110, 92 S.Ct. 2294. "[F]lexibility and reasonable breadth" in the language chosen is constitutionally acceptable. Id.See also City of Portland v. Aziz, 47 Or.App. 937, 615 P.2d 1109, 1114 (1980) (flexibility not equivalent to vagueness).
In People v. New York Trap Rock Corp., 57 N.Y.2d 371, 456 N.Y.S.2d 711, 442 N.E.2d 1222 (1982), the New York Court of Appeals held the Poughkeepsie town noise control ordinance void for vagueness. The ordinance prohibited "unnecessary noise," defined as "any excessive or unusually *565 loud sound or any sound which either annoys, disturbs, injures or endangers the comfort, repose, health, peace or safety of a person." The court ruled that this disjunctive definition could support a violation for producing "any sound which annoy[ed] another person, for it [could] rest solely upon the malice or animosity of a cantankerous neighbor or boiling point of a particular person." Id., at 1226-27 (citations omitted). See also Jim Crockett Promotion, Inc. v. City of Charlotte, 706 F.2d 486, 489 (4th Cir.1983) ("unnecessary" noise prohibition unconstitutionally vague); Dae Woo Kim v. City of New York, 774 F.Supp. 164, 169 (S.D.N.Y.1991) (subjective standard of "unnecessary noise" unconstitutionally vague, following Trap Rock's reasoning); Nichols v. City of Gulfport, 589 So.2d 1280, 1283 (Miss.1991) ("unnecessary noise" inherently vague).
By contrast, the Burlington noise ordinance prohibits "unreasonable noise," defined as that which "disturbs, injures or endangers the peace or health of another or when it endangers the health, safety or welfare of the community." Burlington Code, § 21-13(b)(1). The Vermont Supreme Court has determined that "unreasonable noise" connotes an objective standard, as distinguished from the subjective "unnecessary noise:" "Unreasonable does not mean unnecessary; reasonableness is gauged by the totality of the circumstances at the time." State v. McDermott, 135 Vt. 47, 52, 373 A.2d 510, 514 (1977) (defining unreasonable noise provision of disorderly conduct statute). See also, State v. Linares, 232 Conn. 345, 655 A.2d 737, 743 (1995) ("unreasonable noise" lacks vagueness because "unreasonable" denotes objectivity based on circumstances); Price v. State, 622 N.E.2d 954, 967 (Ind.1993) ("unreasonable noise" prohibition withstands vagueness challenge); City of Beaufort v. Baker, 315 S.C. 146, 432 S.E.2d 470, 474 (1993) ("reasonable" test appropriate guide to prohibited conduct in noise ordinance); City of Madison v. Baumann, 162 Wis.2d 660, 470 N.W.2d 296, 302-04 (1991) (reasonable person standard, incorporated in anti-noise ordinance, limits exercise of police discretion and affords notice of what is prohibited).
In Pro-Choice Network v. Schenck, 67 F.3d 359 (2d Cir.1994), modified on other grounds en banc, 67 F.3d 377 (2d Cir. 1995), aff'd in part, rev'd in part on other grounds, 519 U.S. 357, 117 S.Ct. 855, 137 L.Ed.2d 1 (1997), an anti-abortion organization challenged as impermissibly vague certain provisions of an injunction affecting it, including a prohibition against "excessively loud sound," defined as "one that `injures, disturbs, or endangers the health or safety of any patient or employee of a health care facility at which abortions are performed.'" Id., 67 F.3d at 373. Without discussion, the Second Circuit panel held that, so defined, "excessively loud" was sufficiently clear to withstand a vagueness challenge. Id. The language defining unreasonable noise in the City's noise ordinance is closely similar, and is similarly clear. See also, Grayned, 408 U.S. at 108-11, 92 S.Ct. 2294 (ordinance prohibiting noise that disturbs the peace not void for vagueness); Jim Crockett Promotion, id. ("unreasonably loud" found invulnerable from vagueness attack); Reeves v. McConn, 631 F.2d 377, 385 (5th Cir.1980) ("unreasonably loud" not void for vagueness); Dae Woo Kim, 774 F.Supp. at 166 (statute prohibiting "unreasonable noise" constitutional); People v. Fitzgerald, 194 Colo. 415, 573 P.2d 100, 103 (1978) (statute proscribing "unreasonable noise" not unconstitutionally vague); People v. Bakolas, 59 N.Y.2d 51, 462 N.Y.S.2d 844, 449 N.E.2d 738, 740 (1983) (per curiam) ("unreasonable noise not incapable of definition").
The ordinance, written in the disjunctive, also places a ban on "any loud ... noise." A vagueness challenge to a Trenton, New Jersey ordinance which prohibited amplified emission of "loud and raucous" noise merited "only a passing reference.... While these are abstract words, they have through daily use *566 acquired a content that conveys to any interested person a sufficiently accurate concept of what is forbidden." Kovacs v. Cooper, 336 U.S. 77, 79, 69 S.Ct. 448, 93 L.Ed. 513 (1949) (plurality opinion).[3] The ordinance gives sufficiently fair warning of prohibited conduct by using "words of common understanding," Grayned, 408 U.S. at 112, 92 S.Ct. 2294, and, given the Vermont Supreme Court's objective standard gloss, the ordinance avoids arbitrary and discriminatory enforcement. Id., 408 U.S. at 108-09, 92 S.Ct. 2294. It is not impermissibly vague.

E. Section 21-13(b)(1) is a reasonable time, place or manner restriction; the audibility portion of Section 21-13(b)(2)(a) is not narrowly tailored

Restrictions on protected speech "are valid provided that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." Clark v. Community For Creative Non-Violence, 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984). See also Carew-Reid v. Metropolitan Transp. Auth., 903 F.2d 914, 916 (2d Cir.1990).

1. Content Neutrality

The City's ordinance is content-neutral. In determining content neutrality, "[t]he principal inquiry ... is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." Rock Against Racism, 491 U.S. at 791, 109 S.Ct. 2746. The City's purpose, as stated in the ordinance, is to prohibit excessive noise, and to promote peaceful and respectful coexistence among the residents of the City. Burlington Code, § 21-13(a). The ordinance "applies even-handedly to all" who create loud or unreasonable noise. Heffron v. International Soc. for Krishna Consciousness, Inc., 452 U.S. 640, 649, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981).
Urban Outfitters urges the Court to consider that the noise ordinance will have a disproportionate and discriminatory impact on the playing or unpopular or unfamiliar music: "New music always sounds loud to old ears." Rock Against Racism, 491 U.S. at 810, n. 7, 109 S.Ct. 2746 (Marshall, J., dissenting) (citation omitted). But "a regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." Id., 491 U.S. at 791, 109 S.Ct. 2746. The City's justification for its regulation has nothing to do with content; the ordinance must be deemed content neutral.

2. Narrow Tailoring

A valid time, place or manner restriction must be narrowly tailored to serve a significant governmental interest. Id., 491 U.S. at 796, 109 S.Ct. 2746. The City asserts that it has an interest in prohibiting "excessive and disturbing noise." Burlington Code, § 21-13(a). A government "`ha[s] a substantial interest in protecting its citizens from unwelcome noise.' ... [T]he government may act to protect even such traditional public forums as city streets and parks from excessive noise." Rock Against Racism, 491 U.S. at 796, 109 S.Ct. 2746, quoting Taxpayers, 466 U.S. at 806, 104 S.Ct. 2118 (first bracket in original, citations omitted). See also, Carew-Reid, 903 F.2d at 917 (elimination of excessive noise is substantial and laudable goal).
When a government has demonstrated that its regulation serves a significant interest, it must also demonstrate *567 that the regulation is narrowly tailored to serve that interest. See Community for Creative Non-Violence, id. "[T]he requirement of narrow tailoring is satisfied `so long as the ... regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" Rock Against Racism, 491 U.S. at 799, 109 S.Ct. 2746 (quoting United States v. Albertini, 472 U.S. 675, 689, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985)). The regulation need not be the least restrictive means of serving that interest, but it may not "burden substantially more speech than is necessary to further" it. Rock Against Racism, id.
Urban Outfitters argues that the ban on "loud or unreasonable noise," noise "between units," and noise "from the street" suppresses more speech than is necessary to further the goal of elimination of excessive noise.[4] A provision that "focuses on the source of the evils the city seeks to eliminate" is "the essence of narrow tailoring." Rock Against Racism, 491 U.S. at 799, n. 7, 109 S.Ct. 2746. See also, Carew-Reid, id. The City's ban on loud or unreasonable noise is a direct response to its desire to reduce excessive noise. Section 21-13(b)(1)'s prohibition satisfies the narrow tailoring requirement.
The City's express prohibition on the operation or any device for the production or reproduction of sound "in such a manner as to be audible through walls ... or from the street" is another matter, however. This absolute ban, without reference to volume level or any other standard, could apply to music played at quite moderate levels if doors or windows were open, or if the walls between units of a building were thin. This provision invites discriminatory application and enforcement, and suppresses more speech than is necessary to further goal of eliminating excessive noise. The Court emphasizes that it is not employing a "least restrictive alternative" test; it simply concludes that a ban on all sound, amplified or unamplified, that can be heard through walls or from the street burdens substantially more speech than is necessary to further the City's legitimate interest in eliminating excessive noise. See Rock Against Racism, 491 U.S. at 799, 109 S.Ct. 2746. The audibility provision in Section 21-13(b)(2)(a) is not narrowly tailored, and is therefore unconstitutionally overbroad.

3. Alternative Channels

Section 21-13(b)(1) of the City's ordinance "leave[s] open ample alternative channels for communication." Community for Creative Non-Violence, id. The playing of music is not prohibited, only reduced in volume, and Urban Outfitters has not demonstrated that "the remaining avenues of communication are inadequate." Rock Against Racism, 491 U.S. at 802, 109 S.Ct. 2746. "[T]he First Amendment does not guarantee the right to employ every conceivable method of communication at all times and in all places." Taxpayers, 466 U.S. at 812, 104 S.Ct. 2118. See also, Carew-Reid, 903 F.2d at 919. Section 21-13(b)(1) is a reasonable time, place or manner regulation. It is content neutral, narrowly tailored, and affords ample alternative channels for communication.

IV. Count II

Count II of Plaintiffs' First Amended Complaint alleges breach of contract in that Urban Outfitters operated a "musical *568 device at unreasonably loud levels and in violation of section 21-13" of the Burlington Code. First Am.Compl. ¶¶ 85-87. Because Section 21-13(b)(1) is constitutional, Plaintiffs may proceed on Count II of their complaint, and seek to prove that Urban Outfitters played its music at unreasonably loud levels and in violation of the constitutional portions of Section 21-13. See New York v. United States, 505 U.S. 144, 186, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992) (unless it is evident that legislature would not have enacted constitutional provisions independently of unconstitutional provisions, invalid part may be dropped if what is left is fully operative as a law); Alaska Airlines, Inc. v. Brock, 480 U.S. 678, 684, 107 S.Ct. 1476, 94 L.Ed.2d 661 (1987) (court should refrain from invalidating more of statute than is necessary).

Conclusion
Urban Outfitters' Motion for Judgment on the Pleadings (paper 95) is Granted in Part and Denied in Part. Its request for dismissal of Count II is Denied.
NOTES
[1] Relevant portions of Section 21-13 appear below:

(a) Purpose. The purpose of this section is to preserve the public health, safety, and welfare by prohibiting excessive and disturbing noise and to prevent noise which is prolonged or unsuitable for the time and place and which is detrimental to the peace and good order of the community. It is the goal of this section to allow all residents of our city to peacefully coexist in a manner which is mutually respectful of the interests and rights of others.
(b) Prohibited noise offenses:
(1) General prohibition. It shall be unlawful for any person to make or cause to be made any loud or unreasonable noise. Noise shall be deemed to be unreasonable when it disturbs, injures or endangers the health, safety or welfare of the community, any such noise shall be considered to be a noise disturbance and a public nuisance.
(2) Express prohibitions. The following acts, which enumeration shall not be deemed to be exclusive, are declared to be noise disturbances:
a. Radios, television sets, musical instruments, phonographs and similar devices. The operation or permitting the use or operation of any musical instrument, radio, television, phonograph or other device for the production or reproduction of sound in such a manner as to disturb the peace quiet or comfort of the public or in such a manner as to be audible through walls between units within the same building, from another property or from the street.
****
f. Loudspeakers. The use of loudspeakers or other sound amplification equipment upon the public streets for the purpose of commercial advertising or attracting the attention of the public to any building or site.
****
(e) Enforcement.
(1) First offense. A first offense of any provision of this ordinance by a person during at twelve-month period shall be deemed a civil ordinance violation and shall be punishable by a fine of from one hundred dollars ($100.00) to five hundred dollars ($500.00).... Any law enforcement officer may issue a municipal complaint ticket for such offense.
(2) Second and subsequent offenses. A second offense during a twelve-month period shall be deemed to be a criminal offense and shall be punishable by a fine of from two hundred dollars ($200.00) to five hundred dollars ($500.00). Each subsequent offense shall be deemed a criminal offense and shall be punishable by a fine of from three hundred dollars ($300.00) to five hundred dollars ($500.00).
****
[2] Urban Outfitters also listed Section 21-13(b)(2)(f), which bans the use of loudspeakers on the public streets for commercial purposes, as one of the provisions of the ordinance under discussion. Mot. for J. on Pleadings at 5 (paper 95). It made no argument as to the constitutionality of this provision, however, and the Court will not consider its constitutionality sua sponte.
[3] Although the exact holding of Kovacs is not entirely clear, five justices concluded that the Trenton ordinance was a reasonable regulation of sound amplifying devices. See Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748, 771, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976); Reeves v. McConn, 631 F.2d 377, 382 (5th Cir.1980).
[4] Urban Outfitters urges the City to adopt specific decibel limitations on noise. Opinions differ on the advisability of adopting specific decibel limits. See, e.g., Duffy v. City of Mobile, 709 So.2d 77, 81 (Ala.Crim.App.1997) (decibel level regulation may be difficult to administer); Fitzgerald, 573 P.2d at 103 (standard more specific than "unreasonable noise" would be impractical; determination necessarily varies according to the time, location and decibel level of such conduct). Regardless, "`[t]he validity of [time, place or manner] regulations does not turn on a judge's agreement' ... `concerning the most appropriate method for promoting significant government interests.'" Carew-Reid, 903 F.2d at 918 (quoting Albertini, 472 U.S. at 689, 105 S.Ct. 2897).